**22-11626**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆ ◆

CHEWY, INC.,

*Petitioner,*

—v.—

U.S. DEPARTMENT OF LABOR,

*Respondent.*

ON PETITION FOR REVIEW FROM
THE OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

## BRIEF FOR PETITIONER

THOMAS M. METZGER
LITTLER MENDELSON, PC
41 South High Street, Suite 3250
Columbus, Ohio 43215
(614) 463-4201

WEST HOLDEN
LITTLER MENDELSON, PC
111 North Orange Avenue, Suite 1750
Orlando, Florida 32802
(407) 393-2900

*Attorneys for Petitioner*

## <u>PETITIONER'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 to 26.1-3, Petitioner Chewy, Inc. hereby submits its Certificate of Interested Persons and Corporate Disclosure Statement, which contains a complete list of the administrative law judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, and respectfully discloses the following:

- **Chewy, Inc.**—Petitioner; Chewy, Inc. (Stock Ticker Symbol: **CHWY**)**.** No publicly held company owns 10% or more of Chewy, Inc. stock. However, as noted below, entities affiliated with **Morgan Stanley** (Stock Ticker Symbol: **MS**) own more than 10% of Chewy, Inc.'s Class A common stock.

- **Baumerich, Carol A.**—Administrative Law Judge, Occupational Safety and Health Review Commission

- **Betts, Louise M.**—Counsel for Appellate Litigation, Office of the Solicitor, U.S. Department of Labor

- **Cerveny, John X.**—Executive Secretary for Respondent Occupational Safety and Health Review Commission

i

- **Chastain, Lydia J.**—Office of the Solicitor, U.S. Department of Labor

- **Holden, West A.**—Counsel for Petitioner

- **Howard, Tremelle I.**—Acting Regional Solicitor, Office of the Solicitor, U.S. Department of Labor

- **Littler Mendelson, P.C.**—Counsel for Petitioner

- **Metzger, Thomas M.**—Counsel for Petitioner

- **Morgan Stanley**—Entities affiliated with Morgan Stanley (Stock Ticker Symbol: **MS**) own more than 10% of Chewy, Inc.'s Class A common stock

- **Phillips, Heather R.**—Counsel for Appellate Litigation, Office of the Solicitor, U.S. Department of Labor

- **Tryon, Amy S.**—Counsel for Respondent

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner Chewy, Inc. respectfully requests oral argument. This appeal raises significant issues with the Decision and Order of the Occupational Safety and Health Review Commission ("OSHRC" or "Review Commission") that may impact future proceedings before the Review Commission, and within the Eleventh Circuit and other Circuits. The Review Commission's Decision raises important questions of law, policy, and precedent regarding what the Secretary of Labor must prove to establish a violation of OSHA's "general duty clause," as well as an employer's "actual knowledge" of a requirement to implement specific safety measures in warehouses—particularly in the absence of any industry custom, and in the absence of any advance notice to do so. The Review Commission's Decision establishes a reduced standard for an employer's "actual knowledge" of a requirement to implement specific safety measures—and the standard applied in the Review Commission's Decision conflicts with binding precedent in this Circuit. In addition, this appeal raises important questions of law, policy, and precedent regarding when the general duty clause is preempted by an OSHA standard that covers the issue at hand. These issues are expected to have broad interest throughout the Eleventh Circuit, as well as in all other circuits.

# TABLE OF CONTENTS

**PAGE**

PETITIONER'S CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT ...............................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS........................................................................iv

TABLE OF CITATIONS ........................................................... vii

I.    STATEMENT OF JURISDICTION ..............................................1

II.   STATEMENT OF THE ISSUES ...................................................2

III.  STATEMENT OF THE CASE ......................................................3

      A.    The Course of Proceedings and Disposition Before the
            Occupational Safety and Health Review Commission ......................3

      B.    Statement of Facts ..................................................................4

            1.    Chewy and the Ocala, Florida Warehouse................................4

      C.    OSHA's Powered Industrial Truck Standard......................................7

      D.    Statement Of The Standard Of Review...............................................9

IV.   SUMMARY OF THE ARGUMENT ...........................................10

V.    ARGUMENT......................................................................12

      A.    The Review Commission Erred in Finding that Chewy Violated
            the General Duty Clause Because There is Not Substantial
            Evidence of a Known Requirement to Implement the
            Additional Protective Measures that the Secretary Now Seeks........12

            1.    The Secretary Did Not Prove That Chewy's Industry
                  Customarily Requires The Additional Protective
                  Measures Now Preferred By The Secretary And Imposed
                  In The ALJ Decision...............................................................17

# TABLE OF CONTENTS
(CONT'D)

PAGE

2.    There Was Not Substantial Evidence That Chewy Had Actual Knowledge Of A Requirement To Adopt Additional Protective Measures, As Defined In This Circuit ........................................................................ 25

    a.    Mere Recognition Of An Alleged "Hazard" Is Not Sufficient To Establish Actual Knowledge Of A Requirement To Adopt Additional Protective Measures ................................................................ 27

    b.    Actual Knowledge Of An Alleged Requirement To Adopt Additional Protective Measures May Not Be Established Based On A Low Injury Rate .............. 28

    c.    An Employer's Voluntary Steps To Address A Potential Hazard Does Not Constitute Actual Knowledge Of A Requirement To Implement Additional Protective Measures ..................................... 32

B.    The Review Commission Erred By Imposing Non-Mandatory Recommendations In Order to Cite Chewy Under The General Duty Clause ........................................................................ 37

C.    The General Duty Clause Is Pre-empted By 29 C.F.R. § 1910.178 .................................................................... 41

    1.    29 C.F.R. § 1910.178 Covers The Condition Or Practice That May Result In An Under-Ride Incident .......................... 42

D.    Even If Chewy Could Have Been Cited Under The General Duty Clause, The Review Commission Erred In Affirming The Citation ........................................................................ 45

    1.    The Review Commission Applied The Incorrect Standard In Finding That Chewy Did Not Render Its Workplace "Free" Of The Under-Ride Hazard .......................................... 45

# TABLE OF CONTENTS
(CONT'D)

PAGE

2.    The Review Commission Erred In Finding That The
Multiple Means Of Abatement Implemented By Chewy
Were Inadequate ....................................................................48

a.    Operator Training Materially Reduced The Hazard......49

b.    Wide Aisles Materially Reduced The Hazard...............50

3.    The Review Commission Erred In Finding That The
Secretary Established The Feasibility And Likely Utility
Of The Secretary's Proposed Alternative Means Of
Abatement .............................................................................51

VI.    CONCLUSION.................................................................................54

CERTIFICATE OF COMPLIANCE.......................................................55

CERTIFICATE OF SERVICE ...............................................................56

# TABLE OF CITATIONS

PAGE(S)

CASES

*Alabama Power Co.*,
    13 OSH Cases 1240, 1244 (OSHRC 1987) ........................................45, 46, 49, 51

*Amoco Chemicals Corp.*,
    1986 WL 53497, 12 OSH Cas. (BNA) ¶ 1849
    (OSHRC June 19, 1986) ........................................................................................41

*Armour Food Co.*,
    OSHRC Docket No. 86-247, 1986 WL 53602, *aff'd* in part,
    14 BNA OSHRC 1817, 1990 CCH OSHD ¶ 29088,
    1990 WL 257514 (June 19, 2017) ...................................................................26, 27

*B&B Insulation, Inc. v. OSHRC*,
    583 F.2d 1364 (5th Cir. 1978) ....................................................................... *passim*

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) ............................................................................14

*Bristol Steel & Iron Works, Inc. v. Occupational Safety
    & Health Rev. Comm'n*,
    601 F.2d 717 (4th Cir. 1979) ................................................................................12

*C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety
    & Health Rev. Comm'n*,
    22 F.4th 1284 (11th Cir. 2022) ..................................................................... *passim*

*Cotter & Co. v. Occupational Safety & Health Review Comm'n*,
    598 F.2d 911 (5th Cir. 1979) ........................................................................ *passim*

*CSA Equip. Co.*,
    24 OSH Cas. 1476 (OSHRC 2014)........................................................................52

*Daniel Int'l Corp. v. Occupational Safety & Health Review Comm'n*,
    683 F.2d 361 (11th Cir. 1982) ...............................................................................9

*Davey Tree Expert Co.*,
    11 BNA OSHC 1898 (No. 77-2350, 1984) ...........................................................24

*Dep't of Labor v. Occupational Safety & Health Review Comm'n*,
    938 F.2d 1116 (10th Cir. 1991) .......................................................................30, 31

*Diamond Roofing Co. v. OSHRC*,
    528 F.2d 645 (5th Cir.1976) ...........................................................................20, 23

# TABLE OF CITATIONS

(CONT'D)

PAGE(S)

*Donovan v. Anheuser-Busch, Inc.*,
666 F.2d 315 (8th Cir. 1982) ..................................................................9

*Donovan v. Gen. Motors Corp.*,
764 F.2d 32 (1st Cir. 1985).............................................................30, 34

*Dravo Corp. v. OSHRC*,
613 F.2d 1227 (3d Cir. 1980)................................................................20

*Farrens Tree Surgeons, Inc.*,
15 BNA OSHRC 1793, 1992 CCH OSHD ¶ 29770
(No. 90-998, 1992)......................................................................15, 19

*Fla. Mach. & Foundry, Inc. v. Occupational Safety
& Health Rev. Comm'n*,
693 F.2d 119 (11th Cir. 1982) ..........................................13, 14, 15, 16, 26

*Fluor Daniel v. Occupational Safety & Health Review Commission*,
295 F.3d 1232 (11th Cir. 2002). ..............................................................9

*Gen. Motors Corp.*,
11 OSH Cas. (BNA) ¶ 2062 (OSHRC June 29, 1984) ....................30, 35

*Interstate Brands Corp.*,
20 BNA OSHRC 1102 (No. 00-1077, 2003) .........................................9

*Marshall v. Anaconda Co.*,
596 F.2d 370 (9th Cir. 1979) ................................................................38

*Mo. Basin Well Serv., Inc.*,
26 BNA OSHC 2314 (No. 13-1817, 2018) ..........................................24

*National Realty & Constr. Co. v. OSHRC*,
489 F.2d 1257 (D.C. Cir. 1973).....................................................46, 52

*Owens-Corning Fiberglass Corp. v. Donovan*,
659 F.2d 1285 (5th Cir. 1981) ...................................................... *passim*

*Pemberton Fabricators, Inc.*,
14 OSH Cas. (BNA) ¶ 1608 (OSHRC ALJ, Apr. 9, 1990) ..................35

*Pharmasol Corp.*,
No. 16-1172, 2018 WL 5013447 (OSHRC ALJ, Sept. 4, 2018).....47, 53

## TABLE OF CITATIONS
(CONT'D)

PAGE(S)

*Power Plant Div. v. Occupational Safety & Health Review Comm'n*,
  590 F.2d 1363 (5th Cir. 1979) ................................................................16

*R.L. Sanders Roofing Co. v. Occupational Safety*
  *& Health Rev. Comm'n*,
  620 F.2d 97 (5th Cir. 1980) ...............................................13, 22, 23

*Royal Logging Co.*,
  7 OSH Cases 1744, 1751 (OSHRC 1979), *aff'd*,
  645 F.2d 822, 9 OSH Case 1755 (9th Cir. 1981)...............................52

*Ryder Truck Lines, Inc. v. Brennan*,
  497 F.2d 230 (5th Cir. 1974) ...............................................................20

*S&H Riggers & Erectors, Inc. v. OSHRC*,
  659 F.2d 1273 (5th Cir. 1981) ................................................. *passim*

*S. Ohio Bldg. Sys., Inc. v. Occupational Safety*
  *& Health Rev. Comm'n*,
  649 F.2d 456 (6th Cir. 1981) ...............................................................23

*Sec'y of Labor, Complainant, v. UHS of Westwood Pembroke, Inc.,*
  *UHS of Delaware, Inc., Respondent.*,
  2022 OSH Dec. (CCH) ¶ 33872 (OSHRC Mar. 3, 2022).........................50

*Sec'y of Labor v. United States Postal Serv. Nat'l Ass'n of Letter Carriers*,
  21 OSH Cas. (BNA) ¶ 1767 (OSHRC Nov. 20, 2006).........................51

*Secretary of Labor v. A. Prokosch & Sons Sheet Metal, Inc.*,
  8 OSH Dec. (CCH) ¶ 24840, 1980 WL 10666 (OSHRC 1980) ..........................37, 38, 40, 41

*Secretary of Labor v. Beaird-Poulan*,
  7 OSH Cas. (BNA) 1225 (OSHRC 1979) ...............................................45, 46, 49

*Secretary of Labor v. Cargill, Inc.*,
  10 OSH Cas. 1398 (OSHRC 1982)........................................................52

*Secretary of Labor v. Cargill, Inc.*,
  7 OSH Cas. (BNA) 2045, 1979 OSHD (CCH) ¶ 23765,
  1979 WL 8230 ......................................................................................24, 25

*Secretary of Labor v. Cheff*,
  9 OSH Cas. 1883 (OSHRC 1981)........................................................52

## TABLE OF CITATIONS
(CONT'D)

PAGE(S)

*Secretary of Labor v. Pelron Corp.*,
　12 OSH Cas. (BNA) 1833, 1986-87 OSH Dec. (CCH) ¶ 27605, 1986 WL
　53616 (OSHRC 1986)..................................................................................24, 46

*Secretary of Labor v. A.H. Sturgill Roofing, Inc.*,
　2019 OSH (CCH) ¶ 33712, 2019 WL 1099857 (Feb. 28, 2019)................................... *passim*

*Secretary of Labor v. Tampa Shipyards, Inc.*,
　1987 WL 89204 (Oct. 19, 1987).....................................................................17, 38

*Secretary of Labor v. United States Postal Serv.*,
　21 OSH Cas. (BNA) 1767, 2005 WL 6407173 (OSHRC 2005), *aff'd*. 2006
　WL 6463045 (OSHRC 2006) ...............................................................................48

*Superior Rigging & Erecting Co.*,
　No. 96-0126, 2000 WL 365285 (OSHRC Apr. 5, 2000)...........................................42

*Tampa Elec. Co.*,
　2019 WL 1601695, 2019 OSH Dec. (CCH) ¶ 33722
　(CMPAU Mar. 15, 2019) ...........................................................................12, 16, 19

*United States v. Mar-Jac Poultry, Inc.*,
　756 F. App'x 856 (11th Cir. 2018) .......................................................................35

*W.G. Yates & Sons Constr. Co., Inc. v. Occupational Safety
　& Health Administration*,
　459 F.3d 604 (5th Cir. 2006) .............................................................................44

*Williams Enterp. of Georgia, Inc.*,
　12 BNA OSHRC 2097 (No. 79-4618, 1986), *rev'd* on other grounds,
　832 F.2d 567 (11th Cir. 1987) ...........................................................................15

## STATUTES

5 U.S.C. § 706................................................................................................9

29 U.S.C. § 654(a)(1).....................................................................................3, 12

29 U.S.C. § 659(c) ...........................................................................................1

29 U.S.C. § 660(a) ...........................................................................................2

29 U.S.C. § 661................................................................................................1

# TABLE OF CITATIONS
### (CONT'D)

PAGE(S)

Occupational Safety and Health Act of 1970,
 29 U.S.C. §§ 651-678 (the "Act" or "OSH Act") ............................................. *passim*


**OTHER AUTHORITIES**

29 C.F.R. § 1910.5(f) ........................................................................................ 42

29 C.F.R. § 1910.120 ........................................................................................ 12

29 C.F.R. § 1910.132 ........................................................................................ 12

29 C.F.R. § 1910.132(a) .................................................................................... 31

29 C.F.R. § 1910.178 ................................................................................... *passim*

29 C.F.R. § 1910.178(a) .................................................................................. 7, 11

29 C.F.R. § 1910.178(l) ............................................................................... *passim*

29 C.F.R. § 1926.28(a) ...................................................................................... 15

29 C.F.R. § 2200.91 ............................................................................................ 1

American National Standards Institute,
 ANSI B56.1-2005 ("ANSI") ................................................................... *passim*

11th Cir. R. 26.1-1 ............................................................................................... i

11th Cir. R. 26.1-2 ............................................................................................... i

11th Cir. R. 26.1-3 ............................................................................................... i

Fed. R. App. P. 26.1 ............................................................................................. i

Fed. R. App. P. 32(a)(5) ..................................................................................... 55

Fed. R. App. P. 32(a)(6) ..................................................................................... 55

Fed. R. App. P. 32(a)(7)(B) ............................................................................... 55

Fed. R. App. P. 32(f) .......................................................................................... 55

OSHA Field Operations Manual ("FOM"),
 FOM ch. 4-III-B-2-a ...................................................................................... 47

# TABLE OF CITATIONS
(CONT'D)

PAGE(S)

OSHA Safety and Health Information Bulletin ("SHIB"),
   Standup Forklift Under-ride Hazards (07-27-2009) ......................................................... *passim*

*Powered Industrial Truck Operator Training*; Final Rule,
   63 Fed. Reg. 230 (Dec. 1, 1998) ..............................................................................43

*Powered Industrial Trucks*,
   68 Fed. Reg. 32367 (June 2, 2003) .......................................................................39, 49

U.S. Const. amend. V..........................................................................................................20

## I.    STATEMENT OF JURISDICTION

The United States Department of Labor, Occupational Safety and Health Administration ("OSHA") issued a Citation and Notification of Penalty to Petitioner Chewy, Inc. ("Chewy") (Vol. 7, Item 2) for an alleged violation of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-78 (the "Act" or "OSH Act"). Chewy timely filed a Notice of Contest (Vol. 7, Item 3). At that time, the Occupational Safety and Health Review Commission ("Review Commission" or "OSHRC") obtained jurisdiction pursuant to section 10(c) of the OSH Act, 29 U.S.C. § 659(c).

The matter was heard before an Administrative Law Judge ("ALJ") with the Review Commission on January 5-7, 2021. The ALJ issued her Notice of Decision and Order on February 11, 2022 (Vol. 8, Item 37 ("ALJ Decision" or "Review Commission Decision")), and it was docketed with the Review Commission on February 22, 2022 (Vol. 8, Items 39 and 40). Chewy timely petitioned the Review Commission for discretionary review, but the matter was not directed for review, and the ALJ's Decision became a final order on March 25, 2022 (Vol. 8, Items 41 and 42). The Review Commission had subject matter jurisdiction over this action arising under the laws of the United States pursuant to 29 U.S.C. § 661 (1978) and 29 C.F.R. § 2200.91.

Thereafter, on May 13, 2022, Chewy timely filed a Petition for Review of the Review Commission's final order with this Court. This Court has jurisdiction over timely petitions for review of a final order of the Review Commission, including denial of review, pursuant to section 11(a) of the Act, 29 U.S.C. § 660(a). In addition, pursuant to section 11(a), Chewy appropriately sought review in this Court because the events giving rise to the citation occurred in this Circuit, in Ocala, Florida.

## II.    <u>STATEMENT OF THE ISSUES</u>

1)    Whether the Review Commission erred in using an incorrect legal standard to find that Chewy knowingly violated the Act's general duty clause when there was no evidence of a requirement to implement specific protective measures.

2)    Whether the Review Commission erred in using an incorrect legal standard to determine whether Chewy had "actual knowledge" of a requirement for specific protective measures.

3)    Whether the Review Commission erred in imposing voluntary recommendations in citing Chewy under the general duty clause.

4)    Whether the general duty clause is preempted by 29 C.F.R. § 1910.178.

5)    Whether the Review Commission erred in finding Chewy's multiple means of abatement inadequate.

6)      Whether the Review Commission erred in finding that the Secretary established the feasibility and likely utility of the proposed alternative means of abatement.

## III.    STATEMENT OF THE CASE

### A.    The Course Of Proceedings And Disposition Before The Occupational Safety And Health Review Commission

On May 9, 2019, OSHA issued a Citation and Notification of Penalty to Chewy (Vol. 7, Item 2). The citation issued by OSHA (also known going forward as "Respondent" or the "Secretary") alleges a violation of 29 U.S.C. § 654(a)(1)—the provision typically called the "general duty clause." OSHA's citation alleges that Chewy's employees were exposed to being injured by the horizontal beam on the storage racks at Chewy's fulfillment center. (Vol. 8, Item 37 (ALJ Decision), at pp. 32-33). The Secretary's description of the alleged violation states:

> The horizontal beams of the worksite's shelving units were at a height that could enter the operator's compartment of the Raymond brand 7000 series stand-up lift truck ("lift truck") and strike and/or crush the operator inside the compartment, should the lift truck under-ride a shelving unit.

(*Id*. at p. 28).

The ALJ affirmed one violation of the general duty clause (Vol. 8, Item 37, pp. 2, 61-64, and 69-74). OSHA cited Chewy under the general duty clause because Chewy had not implemented some of OSHA's proposed and non-mandatory methods of addressing an alleged under-ride hazard. In addition, the Secretary cited

Chewy even though Chewy did not have "actual knowledge" as defined by this Circuit of an alleged requirement to implement the voluntary safety measures. OSHA also cited Chewy under the general duty clause even though the alleged violation is preempted by a specific OSHA standard.

### B.    Statement Of Facts

#### 1.    *Chewy And The Ocala, Florida Fulfillment Center*

Chewy is an online retailer of pet food and other pet-related products and services, and it operates numerous "fulfillment centers" or warehouses throughout the United States. (Vol. 2, Tr. 468:17-23, 519:20-520:9). At the time of the 2018 incident in this matter, Chewy employed about 12,000 workers nationwide. (Vol. 1, Tr. 167; Vol. 2, Tr. 484). Chewy's fulfillment centers typically range in size from 600,000 to 800,000 square feet. (Vol. 3, Tr. 590; Vol. 4, Ex. C-9).

One of Chewy's fulfillment centers is located in Ocala, Florida. (Vol. 1, Tr. 167). Chewy's Ocala facility opened in 2017, and it is divided between an "inventory" and a "non-inventory" section. (Vol. 1, Tr. 45, 174; Vol. 2, Tr. 486). The inventory section stores customer-related products such as dog food and cat litter. (Vol. 2, Tr. 540-41; Vol. 3, Tr. 604-05). The incident involved in this matter occurred in the non-inventory section, which is used to store material for Chewy's daily operation of the fulfillment center, such as pallets of cardboard boxes or corrugate. (Vol. 1, Tr. 44-45, 211; Vol. 3, Tr. 606-07; Vol. 4, Ex. C-5).

On December 16, 2018, a Chewy employee was involved in a fatal accident at the Ocala facility. (Vol. 2, at Tr. 522:17-22). The employee was operating a Raymond brand stand-up reach truck, which is a type of forklift or powered industrial truck (the "lift truck"). (Vol. 1, at Tr. 42, 44-45, 92, 159, 266-67; Vol. 2, at Tr. 355; Vol. 6, Ex. J-5, at p. 8; Vol. 4, Ex. C-2). For reasons that were not determined, the lift truck operated by the Chewy employee passed under a horizontal beam of a storage rack—and this is referred to as the "under-ride" incident. (Vol. 1, Tr. 194, 223-24; Vol. 3, Tr. 634, 637, 640-41, 758-59).

The job task that was being performed by the employee with the lift truck is exceedingly common—and almost entirely free from any incident prior to the December 2018 incident. (Vol. 3, at Tr. 636-37, 640, 650-51; Vol. 8, Item 37 (ALJ Decision), at p. 35). Chewy lift truck operators perform the job task of pulling and retrieving pallets from the racking system approximately 30,000 times *per day*, and prior to the incident they had placed and pulled over 20 million loads. *Id.* Prior to the December 2018 incident, and despite the exceedingly common job task, only one prior under-ride incident was ever identified at the Ocala facility. In the earlier incident, which occurred in July 2018, a radio wire inadvertently caught on the steering component of the lift truck, and the operator sustained injuries when he hit the storage rack ("July 2018 incident"). (Vol. 1, Tr. 84, 172, 177, 240-41, 245-46, 252-53, 274-77; Vol. 6, Ex. J-1, at pp. 1, 3; Vol. 5, Ex. R-8). Other than the July

2018 incident, no evidence was introduced to suggest that any other Chewy employee had been injured due to an under-ride incident—despite the task being performed at least 20 million times. Moreover, the record only identified with particularity one other under-ride incident, at a Chewy fulfillment center in Wilkes-Barre, Pennsylvania, and that involved a forklift sliding on water. (Vol. 1, Tr. 168-69). Before the December 2018 incident, there had not been a fatality due to an under-ride incident at any Chewy facility. (Vol. 3, at Tr. 640). In addition, the day-to-day traffic on the non-inventory side of the Ocala fulfillment center was found to be "very light." (Vol. 1, Tr. 205-06; Vol. 3, Tr. 638; Vol. 8, Item 37 (ALJ Decision), at p. 8). Typically there was no pedestrian traffic, and the lift truck operator had the aisle to himself in the non-inventory section. (Vol. 1, Tr. 206-07; Vol. 3, Tr. 638).

After the July 2018 incident, and prior to the December 2018 incident in this matter, Chewy consulted with the manufacturer of the Raymond lift truck regarding the option of adding an extended backrest and an additional post to the lift truck. The Secretary's expert confirmed that the Raymond lift truck at issue here is "a very dominant brand in the industry." (Vol. 2, Tr. 302). This leading manufacturer of lift trucks, Raymond, *declined Chewy's request*—stating that "Raymond *will not approve* to have this installed on their truck." (Vol. 6, Ex. J-2; Vol. 1, Tr. 190; Vol. 6, Ex. J-4, at p. 1). Raymond went on to explain that "on any manufacturer's reach truck with dock stance like you have *you cannot have a post behind the*

*operator.*" *Id.* The manufacturer explained that "this would cause a blind spot, false sense of security and the post could protrude into the operator compartment if hit." *Id.* Therefore, Chewy did not add an additional post to the lift truck prior to the December 2018 incident at issue here. As discussed further below, this is one of the voluntary steps that the Secretary now says Chewy was required to have taken prior to the December 2018 incident.

### C.    OSHA's Powered Industrial Truck Standard

Through a standard Notice and Proposed Rulemaking, OSHA adopted a specific safety standard for powered industrial trucks, including the lift truck at issue in this matter. The standard is under 29 C.F.R. § 1910.178. The powered industrial truck standard covers a wide scope of conditions and practices for powered industrial trucks and "contains safety requirements relating to . . . *design*, maintenance, and *use of* fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks powered by electric motors or internal combustion engines." 29 C.F.R. § 1910.178(a) (emphasis added).

Consistent with 29 C.F.R. § 1910.178(l), Chewy trains its lift truck operators to avoid striking any part of its storage racks. (Vol. 1, Tr. 177; Vol. 3, Tr. 687-89). Chewy instructs its operators to look in the direction of travel, maintain control of the lift truck, travel at safe speeds, and to safely maneuver while handling a load, as also addressed in 29 C.F.R. § 1910.178. Chewy's training includes extensive

instruction in the field and on the racks where the operators actually perform their work. (Vol. 3, Tr. 687-89). The Secretary's expert witness and OSHA's compliance officer agreed with Chewy that the training required by 1910.178(l) addresses the under-ride hazard. (Vol. 1, Tr. 115-16; Vol. 2, Tr. 434). The Secretary's expert testified that the under-ride hazard is at "the top of list" of hazards addressed by 1910.178. (Vol. 2, Tr. 434). The Secretary also stipulated that Chewy complied with the training requirements of 1910.178(l). (Vol. 2, Tr. 469-70; Vol. 8, Item 37 (ALJ Decision), at p. 27). The ALJ Decision expressly acknowledges that the "training standards at section 1910.178 ... *are geared toward preventing the under-ride*." (*Id*., at p. 29) (emphasis added).

Chewy also designed the aisles between its storage racks to have additional width so operators could more easily maneuver their lift trucks when pulling and placing loads in the racks. (Vol. 1, Tr. 62, 152, 234-35; Vol. 2, Tr. 482; Vol. 4, Ex. C-3, at p. 2). Chewy's aisles are 127 inches wide. *Id.* The lift truck manufacturer, Raymond, only requires the aisles to be 115 inches wide for the safe maneuvering of its trucks. (Vol. 2, Tr. 482-83). The Secretary's expert testified the lift trucks could safely operate in aisles as narrow as 106 inches. (Vol. 2, Tr. 397). The Secretary's expert also acknowledged that Chewy's wider aisles significantly reduce the likelihood of an operator striking a rack, including by under-ride. (Vol. 2, Tr. 402-03).

### D.    Statement Of The Standard Of Review

This Court will reverse a legal determination by the Review Commission or an administrative law judge if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706; *Fluor Daniel v. Occupational Safety & Health Review Comm'n*, 295 F.3d 1232, 1236 (11th Cir. 2002). The Review Commission and its administrative law judges are bound to follow the law of the circuit to which a case would likely be appealed. *Interstate Brands Corp.*, 20 BNA OSHRC 1102, 1104 n.7 (No. 00-1077, 2003).

However, an ALJ's interpretation of the OSHA standard is <u>not</u> entitled to deference when, as in this case, the Review Commission has not reviewed the ALJ's decision. *See Donovan v. Anheuser-Busch, Inc*., 666 F.2d 315, 326 (8th Cir. 1982). An unreviewed ALJ decision is not binding precedent upon the Review Commission and does not "necessarily (express) the views of the Commissioners, or (declare) Commission policy." *Id*.

Review Commission factual findings and conclusions are upheld if supported by substantial evidence on the record considered as a whole. *Daniel Int'l Corp. v. Occupational Safety & Health Review Comm'n*, 683 F.2d 361 (11th Cir. 1982).

## IV.   **SUMMARY OF THE ARGUMENT**

A general safety measure from OSHA, such as the general duty clause, requires only those protective measures which the employer's industry would deem appropriate under the circumstances. The Review Commission applied the incorrect legal standard in determining that Chewy violated the general duty clause. The Secretary failed to produce any evidence regarding what protective measures Chewy's industry has adopted as customary and would require in order to address an under-ride incident.

In addition, the record does not contain substantial evidence that Chewy had "actual knowledge" as defined in this Circuit, that the potential for an under-ride incident *required* Chewy to implement additional protective measures raised by the Secretary in the citation. The ALJ Decision is inconsistent with the legal standard to determine whether Chewy had "actual knowledge" of any such requirement.  In this Circuit, in order to prove "actual knowledge" the Secretary must establish the employer has actual knowledge that a hazard requires implementation of the additional protective measure. Here, the ALJ Decision addressed whether Chewy had knowledge of the particular work being performed in the fulfillment center, and of the potential under-ride hazard—but not whether Chewy had actual knowledge of a *requirement* to protect against an under-ride incident in the manner specified by the Secretary here.

Based on the *absence* of any evidence of industry custom, combined with the lack of "actual knowledge" of an alleged requirement to implement additional, specific safety measures to protect against an under-ride, the citation under the general duty clause must be vacated.

The ALJ's Decision is also in error because the citation under the general duty clause is preempted by a more specific standard. OSHA already enforces a safety standard for powered industrial trucks, including the lift truck at issue in this matter. The powered industrial truck standard under 1910.178 covers a wide scope of conditions and practices for powered industrial trucks and "contains safety requirements relating to . . . *design*, maintenance, and *use of* fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks powered by electric motors or internal combustion engines." 29 C.F.R. § 1910.178(a) (emphasis added).

The ALJ Decision should be reversed and the citation should be vacated. The record does not establish that Chewy violated the general duty clause by not implementing additional, voluntary safety measures that have not risen to the level of industry custom, Chewy did not have actual knowledge of a requirement to implement the safety measures, and the citation under the general duty clause is preempted.

## V.    ARGUMENT

### A.    The Review Commission Erred In Finding That Chewy Violated The General Duty Clause Because There Is No Substantial Evidence Of A Known Requirement To Implement The Additional Protective Measures That The Secretary Now Seeks

The citation issued by Respondent alleges a violation of 29 U.S.C. § 654(a)(1), the provision typically called the "general duty clause." The general duty clause is equivalent to a performance standard—such as OSHA's personal protective equipment standard in 29 C.F.R. § 1910.132, and other general standards—because it merely identifies an objective, and does *not* specify the means for accomplishing it. *Tampa Elec. Co.*, 2019 WL 1601695, 2019 OSH Dec. (CCH) ¶ 33722 (CMPAU Mar. 15, 2019) (discussing additional performance standard for hazardous waste under 29 C.F.R. § 1910.120). "To satisfy due process requirements the courts have applied some form of the reasonable man test to the general duty clause and the various general safety standards found in the regulations." *Bristol Steel & Iron Works, Inc. v. Occupational Safety & Health Rev. Comm'n*, 601 F.2d 717, 722 (4th Cir. 1979), citing *B&B Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1370-72 (5th Cir. 1978) (additional citations omitted). A general OSHA standard or safety measure "is construed as containing the 'reasonable man' test, for otherwise the mandate would not afford a reasonable warning of the proscribed conduct and would not meet constitutional standards." *Cotter & Co. v. Occupational Safety & Health Review Comm'n*, 598 F.2d 911, 913-14 (5th Cir. 1979).

In this Circuit, to prove a violation of a general safety measure such as the general duty clause, it is not enough for the Secretary to show that the employer or its industry recognized a hazard. Due process requires the Secretary to show either that implementation of additional protective measures has risen to the level of an industry custom or that "the employer ha[d] actual knowledge that a hazard requires the use of ... [the] personal protective equipment" or implementation of the additional protective measures. *C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*, 22 F.4th 1284, 1285 (11th Cir. 2022); quoting *Fla. Mach. & Foundry, Inc. v. Occupational Safety & Health Rev. Comm'n*, 693 F.2d 119, 120 (11th Cir. 1982). As this Circuit has expressed in vacating a citation under the general duty clause, "[a]n employer is entitled to fair notice that he may be charged with a statutory violation," and this Circuit defines "fair notice" in a more exacting manner than the Review Commission. *R.L. Sanders Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 620 F.2d 97, 100 (5th Cir. 1980) (employer was not "sufficiently apprised of his potential liability under general duty clause" and therefore citation was vacated).

In this Circuit, the Secretary has a high burden to prove a violation of a general safety measure. What must be proven in this Circuit is different than the standard applied in the ALJ Decision here. Subject to one exception as discussed below, a general safety objective from OSHA "requires *only those protective measures*

which *the employers' industry would deem appropriate under the circumstances*." *Fla. Mach. & Foundry, Inc. v. OSHRC, United Steelworkers of Am., AFL-CIO, & Local Union 8115, 36*, 693 F.2d 119, 120 (11th Cir. 1982) (emphasis added); citing *B&B Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1370-72 (5th Cir. 1978), and *S&H Riggers & Erectors, Inc. v. OSHRC*, 659 F.2d 1273, 1275 (5th Cir. 1981) (in the absence of a clear articulation by the Review Commission of circumstances when industry practice is not controlling, due process requires showing that employer failed to provide what is *customarily required in its industry*); *see also Cotter & Co. v. Occupational Safety & Health Review Comm'n*, 598 F.2d 911 (5th Cir. 1979).[1]

Earlier this year, this Circuit vacated an OSHA citation under another broad performance standard because the Review Commission did not apply the correct legal standard and the Secretary did not present substantial evidence that the employer had actual knowledge of a requirement for certain protective measures. As confirmed in *C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*, 22 F.4th 1284, 1285 (11th Cir. 2022), "our precedents required the Secretary to prove either that the provision and use of personal protective equipment is industry custom or that 'the employer ha[d] actual knowledge that a hazard requires the use of ... [the] personal protective equipment.'" *Id.*, citing

---

[1]    Fifth Circuit precedents cited above establish the law of this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

*Fla. Mach. & Foundry, Inc. v. Occupational Safety & Health Rev. Comm'n*, 693 F.2d 119, 120 (11th Cir. 1982). Therefore, in order for the Secretary to establish that an employer violated a broad measure such as the general duty clause, the Secretary must produce substantial evidence regarding what the employer's industry would deem appropriate under the circumstances.

The Review Commission recognizes that substantial evidence of what the employer's industry may require is essential within this Circuit. As discussed in *Farrens Tree Surgeons*, "[w]here a case can be appealed to the Eleventh Circuit and an alleged violation of a general personal protective equipment standard is at issue, the Commission has vacated a citation item, alleging a violation" under a general performance standard "based on the Secretary's failure to prove industry practice or actual knowledge." *Farrens Tree Surgeons, Inc.*, 15 BNA OSHRC 1793, 1794, 1992 CCH OSHD ¶ 29770 (No. 90-998, 1992) (vacating citation under section 1926.28(a)), citing *Williams Enterp. of Georgia, Inc.*, 12 BNA OSHRC 2097, 2101 (No. 79-4618, 1986), *rev'd* on other grounds, 832 F.2d 567 (11th Cir. 1987). Based on binding precedent from the Eleventh Circuit, the Review Commission in *Farrens Tree Surgeons* ruled that:

> [i]n light of *the Secretary's failure to introduce into the record in this case any evidence as to whether Farrens was following industry custom* in not providing warning vests and hard hats, or whether Farrens had actual knowledge of the hazard, we must vacate the citation

> alleging a violation of section 1910.132(a) on this basis,
> without further analysis.

*Id.* (emphasis added); *see Power Plant Div. v. Occupational Safety & Health Review Comm'n*, 590 F.2d 1363, 1365 (5th Cir. 1979) (an alleged preventable hazard does not automatically support a violation of a general safety measure such as the personal protective equipment standard).

Furthermore, as recently summarized and reaffirmed by the Review Commission in *Tampa Elec. Co.*, OSHRC Docket No. 17-2144, 2019 CCH OSHD ¶ 33722, 2019 WL 1601695, at **5-6 (Mar. 15, 2019), the binding precedent in the Eleventh Circuit "*differs* from that of the Commission's reasonable person test" in that:

> [w]hile Commission precedent holds that industry custom and practice are useful points of reference but are not controlling, the [old] Fifth Circuit has stated that, *when a reasonable person test is used to determine what is required under a general standard*, there should be a *close identification* between the projected behavior of the reasonable person *and the customary practice of employers in the industry*.

*Tampa Elec. Co.*, 2019 WL 1601695, at *5 (emphasis added)*, citing *B&B Insulation*, 583 F.2d at 1370 (5th Cir. 1978)*, (due process requires showing that employer failed to provide what is customarily required in its industry); *see also Fla. Mach. & Foundry,* 693 F.2d at 120 (11th Cir. 1982)*; Cotter & Co.,* 598 F.2d at 913 (5th Cir. 1979); *S&H Riggers & Erectors, Inc. v. Occupational Safety & Health Review*

*Comm'n*, 659 F.2d 1273 (5th Cir. 1981). Consistent with this Circuit's precedent, as the Review Commission has explained, "[t]he general duty clause cannot be used to enforce 'should' standards," and may only be applied to enforce safety measures that have been required in advance. *Secretary of Labor v. Tampa Shipyards, Inc.*, 1987 WL 89204 (Oct. 19, 1987) (OSHRC).

1.  ***The Secretary Did Not Prove That Chewy's Industry Customarily Requires The Additional Voluntary Protective Measures Proposed By The Secretary And Imposed In The ALJ Decision***

The ALJ Decision is in error because it is inconsistent with this Circuit's precedent which requires substantial evidence of industry custom before a general performance standard—and specific protective measures—may be enforced against an employer. The Secretary may not satisfy this substantial burden by merely establishing recognition of the hazard itself. The standard for proving a violation is far more exacting. The ALJ Decision repeatedly focuses on whether Chewy and its industry "recognizes the under-ride hazard," but there was no evidence, and no finding in the ALJ Decision, that implementation of the additional protective measures has risen to the level of an industry custom. (Vol. 8, Item 37 (ALJ Decision), at pp. 35-37). *See C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*, 22 F.4th 1284, 1285 (11th Cir. 2022).

The ALJ Decision and the Secretary repeatedly refer to voluntary guidance that provides suggestions or options for addressing an under-ride incident in an effort

to merely assert that there is recognition of the under-ride *hazard* itself. For example, the ALJ Decision refers to OSHA's voluntary Safety and Health Information Bulletin ("SHIB") entitled "Standup Forklift Under-ride Hazards" (SHIB-07-27-2009), which identifies additional "examples" of safety measures that could be used to address an under-ride hazard. (Vol. 4, Ex. C-2; Vol. 8, Item 37 (ALJ Decision), at p. 16). The SHIB also references advisory guidance from the American National Standards Institute ("ANSI"), ANSI B56.1-2005, which relates to stand-up forklifts. While the ANSI guidance recognizes the under-ride *hazard*, neither the ANSI guidance nor the SHIB require implementation of the additional suggested safety measures. In particular, the SHIB states: "[t]his Safety and Health Information Bulletin is *not a standard or regulation*, and it creates *no new legal obligations*." (Vol. 4, Ex. C-2, p. 3) (emphasis added). In recommending abatement methods for the under-ride hazard, the SHIB merely states, "the employer *should* take *one or more* of the following actions," and Chewy did so by adopting and implementing the training set out in OSHA's standard for powered industrial trucks at 1910.178(l). (*Id*.). Similarly, the ANSI guidance merely uses advisory language, such as guidance to manufacturers that "[g]uards or other means *may* be provided as part of the truck to limit intrusions into the operator's area of horizontal members... ." (ANSI, Section 7.30.1; Vol. 4, Ex. C-1, p. 10) (emphasis added).

The record includes no evidence that other employers in Chewy's industry customarily include protective measures beyond what Chewy had implemented. Instead, the Secretary only argued that Chewy did not implement the additional, voluntary protective measures in the SHIB and ANSI guidance that the Secretary sought to impose after the accident. This is the same flawed analysis that the Review Commission has repeatedly rejected when the Secretary has sought to enforce a performance standard in this Circuit. *Tampa Elec. Co., Respondent*, 2019 OSH Dec. (CCH) ¶ 33722 (CMPAU Mar. 15, 2019); *Farrens Tree Surgeons, Inc.,* 15 BNA OSHC 1793, 1794, 1992 CCH OSHD ¶ 29770 (No. 90-998, 1992). The record does not establish that the voluntary steps outlined in the SHIB and ANSI guidance have risen to the level of industry custom as defined by the precedent in this Circuit, and the Secretary's statement that Chewy did not implement these voluntary measures does not cure that defect.[2]

Consistent with the advisory, voluntary nature of the SHIB and ANSI guidance, OSHA has *not* issued a safety standard that requires the particular safety measures that OSHA now says an employer should implement to help prevent an under-ride incident. The ALJ Decision emphasizes that "the Secretary *does not 'require'* specific guarding for the lift truck at issue. Rather, the Secretary *proposes*

---

[2] The Secretary's post-hearing brief confirms that the manufacturer of the lift truck at issue merely identified "optional accessories" for the lift truck equipment at issue. (Post-Hearing Brief, Vol. 8, Item 35, p. 4).

[lift] truck guarding methods as a feasible means to materially reduce or eliminate the under-ride hazard, among other feasible abatement methods...." (Vol. 8, Item 37 (ALJ Decision), at p. 30) (emphasis added). However, consistent with this Circuit's precedent, if no industry custom establishes the additional measures as a requirement, the Secretary cannot impose the specific measures upon Petitioner by citing to the general duty clause. *C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*, 22 F.4th 1284, 1285 (11th Cir. 2022).

To comport with the due process clause of the Fifth Amendment to the U.S. Constitution, standards must provide employers with fair notice of their compliance responsibilities. *See Dravo Corp. v. OSHRC*, 613 F.2d 1227, 1232 (3d Cir. 1980), and cases cited therein; *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir. 1974). To assure that employers receive such notice, standards must not be interpreted to impose duties that their plain meaning does not support. *See Diamond Roofing Co. v. OSHRC*, 528 F.2d 645 (5th Cir.1976).

Although the primary rule in this Circuit is that the Secretary can require *only* those protective measures under a general performance standard which the employer's industry would deem appropriate under the circumstances, here the Secretary and the ALJ Decision only focused on the recognition of the under-ride *hazard*–and there is *no evidence* that the additional, voluntary protective measures sought by OSHA to prevent an under-ride incident have risen to the level of industry

custom. OSHA is now seeking to establish a new, previously unspoken requirement for an employer to implement the additional measures. The Secretary's *post hoc*, unsupported opinion as to what may be desired or even ideal does not establish that there is any *requirement* to implement the measures.

In *Cotter & Co.*, 598 F.2d 911, 914 (5th Cir. 1979), the Court of Appeals reversed the Review Commission's decision to affirm the citation, finding that there was not substantial evidence to support the conclusion that a reasonably prudent employer in the warehousing and distribution industry would have understood that the use of steel-toed shoes, or equivalent safety-toed shoes, was mandated by the conditions on the employer's shipping and receiving docks. *Id.* at 912. As the Court of Appeals stated in *Cotter & Co.*, the conclusions in *B&B Insulation* "bear repeating":

> Where the reasonable man is used to interpolate specific duties from general OSHA regulations, the character and purposes of the Act suggest a closer identification between the projected behavior of the reasonable man and *the customary practice of employers in the industry*. The purpose of the Act is preventive rather than compensatory. Achievement of its goal of reducing industrial accidents depends upon employer compliance through elimination of legislatively identified safety and health hazards by prescribed remedial measures. *Preventive goals are obviously not advanced where broad standards are extended to encompass every situation which gives rise to an unlikely accident.*

*Cotter & Co.*, 598 F.2d at 913, quoting *B&B Insulation*, 583 F.2d at 1370-72 (emphasis added). As the Court reiterated in *Cotter & Co*.:

> [t]he Act indicates that Congress thought specificity of standards desirable. In light of the Acts preventive purpose and the intended specificity of its standards, the employer whose activity is *not yet addressed by a specific regulation* and whose conduct conforms to the common practice of those similarly situated in his industry *should generally not bear an extra burden*.

*Id.* at 913, quoting *B&B Insulation*, 583 F.2d at 1370-72. In *Cotter & Co.,* although there was some recognition of a hazard in the form of the potential for foot injuries, the Court explained that "[t]here is, however, no compelling evidence presented on this record to the effect that steel-toed shoes *ought to be required* on shipping and receiving docks in the warehousing and distribution industry. Such a determination, absent clear and uncontradicted proof, *is best left to the standard-making machinery provided in the Act*." *Cotter & Co*., 598 F.2d at 914 n.5, citing *B&B Insulation*, 583 F.2d at 1370-72 (emphasis added).

Similarly, in *R.L. Sanders Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 620 F.2d 97, 101 (5th Cir. 1980), the Court vacated a citation under the general duty clause where the Secretary had not provided the employer with "'a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents'" and where the employer therefore was not "sufficiently apprised of his potential liability under the general duty clause" for

failing to implement additional protection measures. *Id.*, quoting *Diamond Roofing Co. v. OSHRC*, 528 F.2d 645, 649 (5th Cir. 1976). The Court emphasized:

> [a]s we noted in *B&B Insulation*: "Where the Government seeks to encourage a higher standard of safety performance from the industry than customary industry practices exhibit, the proper recourse is to the standard-making machinery provided in the Act, selective enforcement of general standards being inappropriate to achieve such a purpose."

*R.L. Sanders Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 620 F.2d 97, 101 (5th Cir. 1980), quoting *B&B Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1371 and n.14 (5th Cir. 1978). *Id.* at 1371; *see also S. Ohio Bldg. Sys., Inc. v. Occupational Safety & Health Rev. Comm'n*, 649 F.2d 456, 461 (6th Cir. 1981) (vacated citation under general duty clause where employer was not sufficiently apprised of alleged requirement to implement specific safety measures for roofing work).

Here, there is also no evidence that the industry in which Chewy operates requires the use of the additional protective measures that OSHA now seeks to impose as a requirement to address an under-ride hazard. As the Court stated in *Cotter & Co.* and in *B&B Insulation*, "the Commission's disregard of demonstrated industry custom is improper." *Id.* In this Circuit, an employer cannot be "held in violation of a general federal admonition" where the employer's conduct "is representative of that of employers in his industry under similar circumstances."

*B&B Insulation*, 583 F.2d at 1364. The Secretary failed to demonstrate that the additional protective measures were "mandated by the conditions for which" Chewy was cited, and therefore the citation should be dismissed. *Id.*

Although the general duty clause was enacted to cover serious hazards to which no specific OSHA standard applies, the Review Commission recognizes that the Secretary may not use the general duty clause when there is not fair notice of a requirement to implement safety measures sought by OSHA. *Mo. Basin Well Serv., Inc.*, 26 BNA OSHC 2314, 2316 n.5 (No. 13-1817, 2018); *Pelron Corp.*, 12 BNA OSHC 1833, 1835 (No. 82-388, 1986) ("To permit the normal activities in ... an industry to be defined as a 'recognized hazard' within the meaning of section 5(a)(1) is to eliminate an element of the Secretary's burden of proof"). In addition, "to comport with due process, the Secretary must define the hazard that he charges an employer with allowing to exist at its worksite in a manner that 'apprise[s] [the employer] *of its obligations*." *A.H. Sturgill Roofing, Inc.*, 2019 OSH Dec. (CCH) ¶ 33712, 2019 WL 1099857 (Feb. 28, 2019) (concurring opinion), citing *Davey Tree Expert Co.*, 11 BNA OSHC 1898, 1983 (No. 77-2350, 1984) (emphasis added).

As expressed by the Review Commission in similar circumstances, this case "represents a fresh attempt by the Secretary to invoke the advisory provisions of private industry standards without observing the formal rulemaking procedures contained in the Act." *Secretary of Labor v. Cargill, Inc.*, 7 OSH Cas. (BNA) 2045,

1979 OSHD (CCH) ¶ 23765, 1979 WL 8230 (Oct. 22, 1979). "Under the aegis of General Duty Clause enforcement the Secretary again confronts employers with modified advisory regulations, without affording them prior notice or an opportunity to voice opposition." *Id.*

Chewy was not on notice, and could not have been on notice, that it acted inconsistent with any industry practice concerning the additional, voluntary safety measures that the Secretary now seeks to impose. In light of the Secretary's failure to introduce evidence as to whether Chewy was following industry custom in not implementing the additional protective measures to address an under-ride hazard, the citation under the general duty clause must be vacated.[3]

**2.**     ***There Was Not Substantial Evidence That Chewy Had Actual Knowledge Of A Requirement To Adopt Additional Protective Measures, As Defined In This Circuit***

This Circuit has long held that the sole "exception" to the requirement for the Secretary to establish that certain protective measures under a general safety measure have risen to the level of industry custom "imposes a further requirement in cases where, although his conduct conforms to the practices of the industry, the employer has *actual knowledge that a hazard <u>requires</u> the use of <u>some other or</u>*

---

[3]     Due to the Secretary's failure to demonstrate industry custom, there is no basis to remand this case for further findings on this issue. *See Cotter & Co. v. Occupational Safety & Health Review Comm'n*, 598 F.2d 911, 914 (5th Cir. 1979), n. 4.

_additional personal protective equipment_." _Fla. Mach. & Foundry, Inc.,_ 693 F.2d at 120 (11th Cir. 1982) (emphasis added); citing _Owens-Corning Fiberglass Corp. v. Donovan,_ 659 F.2d 1285, 1288 (5th Cir. 1981); _see also C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety & Health Rev. Comm'n_, 22 F.4th 1284, 1285 (11th Cir. 2022). That exception does not apply here.

OSHA alleged that Chewy violated the general duty clause by failing to implement additional, voluntary protective measures to address under-ride incidents. The ALJ Decision does not establish actual knowledge of a requirement for the additional protective measures. As the Review Commission has recognized, the standard to prove actual knowledge in this Circuit is different than the standard used by the Review Commission, and this Circuit's precedent requires the Secretary to prove that the employer had "clear actual knowledge" that a particular protective measure was required to address a hazard. Indeed, as even acknowledged by the Review Commission, this Circuit's actual knowledge standard is more stringent and "superior" to the standard used by the Review Commission. _See Armour Food Co._, OSHRC Docket No. 86-247, 1986 WL 53602, at *2, _aff'd_ in part, 14 BNA OSHRC 1817, 1990 CCH OSHD ¶ 29088, 1990 WL 257514 (June 19, 2017).[4]

---

[4] While the Review Commission is not required to follow the rulings of the U.S. Circuit Courts, "the Commission must 'give due deference' (_S&H Riggers, supra_) to them and on this particular issue, the reasoning of the Fifth Circuit is superior to that of the Commission, particularly in light of the due process requirement that the employer be given proper and adequate advance notice of the requirements of any

### a. Mere Recognition Of An Alleged "Hazard" Is Not Sufficient To Establish Actual Knowledge Of A Requirement To Adopt Additional Protective Measures

Here, the ALJ Decision is in error because it failed to apply the correct standard to determine "actual knowledge." The ALJ addressed whether Chewy had knowledge of the work being performed in the fulfillment center and of a potential under-ride hazard—but not whether Chewy had actual knowledge of a *requirement* to implement additional, voluntary protective measures to address a hazard under the circumstances presented at Chewy's facility. (Vol. 8, Item 37 (ALJ Decision), at p. 37). The ALJ Decision emphasized that Chewy had knowledge that the worker was operating the lift truck, and that Chewy and its industry recognized the under-ride hazard. *Id.* Critically, the ALJ Decision never found that Chewy had actual knowledge of a *requirement for additional protective measures* under those circumstances in the fulfillment center.

A finding that Chewy knew a lift truck operator was performing work in the fulfillment center without the additional protective measures does not constitute substantial evidence that Chewy had *actual knowledge* that an alleged under-ride

---

regulation that imposes civil penalties and substantial compliance costs." *See Armour Food Co.*, OSHRC Docket No. 86-247, 1986 WL 53602, at *2, *aff'd* in part, 14 BNA OSHC 1817, 1990 CCH OSHD ¶ 29088, 1990 WL 257514 (June 19, 2017).

hazard *required* the implementation of the additional protective measures. *See Cotter & Co.*, 598 F.2d at 913-14 (5th Cir. 1979).

The Secretary may not prove actual knowledge of a requirement for additional protective measures by merely pointing to an alleged hazard, and by then asserting an after-the-fact conclusion that the additional protective measures were required— particularly when there was no evidence of any industry custom to implement the protective measures under the circumstances. Not all hazards require additional protective measures. The existence of a hazard does not also mean the employer is on notice that additional protective measures are required. As the Court of Appeals recognized in *S&H Riggers & Erectors, Inc.*, the Secretary must be required to prove with specificity an employer's actual knowledge because when establishing requirements under a general and broadly worded standard "due process requires that employers be given more advance notice than this of the requirements of any regulation imposing civil penalties and substantial compliance costs." *S&H Riggers & Erectors, Inc. v. OSHRC*, 659 F.2d at 1281.

> **b.** **Actual Knowledge Of An Alleged Requirement To Adopt Additional Protective Measures May Not Be Established Based On A Low Injury Rate**

This Circuit, along with other Circuits and the Review Commission, have also consistently concluded that the Secretary fails to establish actual knowledge of a requirement for specific protective measures when there are few or no prior

injuries to put the employer on notice of the requirement for the protective measure. "A very low injury rate has a *definite bearing* on the question whether an employer has notice that personal protective equipment is necessary under a general regulation" such as the performance standard for personal protective equipment. *Owens-Corning Fiberglass Corp*, 659 F.2d at 1290 (5th Cir. 1981) (emphasis added). Under-ride incidents are extremely rare. Chewy lift truck operators perform the job task of pulling and retrieving pallets from the racking system approximately 30,000 times *per day*, and have placed and pulled over 20 million loads. (Vol. 3, at Tr. 636-37, 640, 650-51; Vol. 8, Item 37 (ALJ Decision), at p. 35). Prior to the December 2018 incident, only one prior under-ride incident was ever identified at the Ocala facility. (Vol. 1, Tr. 84, 172, 177, 240-41, 245-46, 252-53, 274-77; Vol. 6, Ex. J-1, at pp. 1, 3; Vol. 5, Ex. R-8) (the "July 2018 incident"). Other than the July 2018 incident, there was no evidence that a Chewy employee at any facility had previously been injured due to an under-ride incident—despite the task being performed millions of times. Moreover, the record only identified with particularity one other under-ride incident, which occurred at a Chewy fulfillment center in Wilkes-Barre, Pennsylvania, and that involved a forklift sliding on water. (Vol. 1, Tr. 168-69). Before the December 2018 incident, there had not been a fatality due to an under-ride incident at any Chewy facility. (Vol. 3, at Tr. 640).

In *Donovan v. Gen. Motors Corp.,* 764 F.2d 32, 35 (1st Cir. 1985), the Secretary cited GM, the employer, for a violation of the general safety measures in the personal protective equipment standard. There was some evidence of prior foot injuries, yet the employer did not require employees to wear protective footwear. In the earlier stages of the case, the Review Commission had concluded that "we are unconvinced that the number of injuries incurred *gave GM actual knowledge that a hazard <u>warranting safety shoes</u> existed*." *Gen. Motors Corp.*, 11 OSH Cas. (BNA) ¶ 2062 (OSHRC June 29, 1984) (emphasis added). The Court of Appeals was asked to decide the issue of whether the employer was on notice that the proposed protective measure was necessary under the circumstances to address the possibility of foot injuries—some of which had already occurred. The Court of Appeals confirmed that the citation should be vacated, agreeing with the Review Commission and emphasizing that there was an insufficient number of injuries to put General Motors on actual notice that protective footwear was required. *Gen. Motors Corp.*, 764 F.2d at 37.

In *Dep't of Labor v. Occupational Safety & Health Review Comm'n*, 938 F.2d 1116, 1118 (10th Cir. 1991), the Court of Appeals was asked to decide whether the Secretary had established an employer's actual knowledge of the need for a particular form of personal protective equipment when no employee had previously "suffered the type of injury which would have been prevented by the use

of face shields." *Id.* at 1119. In agreeing that there was insufficient evidence to establish the employer's actual knowledge of the requirement for the protective measure, the Court of Appeals explained that "a very low injury rate has a *definite bearing* on the question *whether an employer has notice that personal protective equipment is necessary*...." *Id.* (emphasis added), citing *Owens-Corning Fiberglass Corp.,* 659 F.2d at 1290 (5th Cir. 1981) (citations omitted) (section 1910.132(a); also citing *Cotter & Co.,* 598 F.2d 911, 914-15 (5th Cir. 1979).

Here, the ALJ Decision is in error because it applied the incorrect standard for "actual knowledge," and there is not substantial evidence that Chewy had clear actual knowledge and fair notice that additional protective measures were required under the circumstances. Given the very low incident rate, and given that the Secretary did not present evidence that the protective measures had risen to the level of an industry custom, the Secretary did not prove that Chewy had actual knowledge of an alleged *requirement to implement* the protective measures in these circumstances. Actual knowledge "must be established [by showing] that the *employer* has '*specific, confirmed knowledge'* that personal protective equipment is necessary." *S&H Riggers & Erectors, Inc.*, 659 F.2d at 1285 (quoting *Cotter*, 598 F.2d at 914-15) (emphasis added). It is insufficient for OSHA to simply point to an alleged hazard, such as the operation of a lift truck that could result in a serious

injury, as evidence of employer knowledge. *Id.* Therefore, the ALJ Decision should be reversed and the citation should be vacated.

> **c.    An Employer's Voluntary Steps To Address A Potential Hazard Does Not Constitute Actual Knowledge Of A Requirement To Implement Additional Protective Measures**

Even when an employer took some steps to address a potential hazard, this does not mean that the employer has "actual knowledge" that additional protective measures are *required*. The ALJ Decision is in error because it fails to recognize this distinction. Indeed, the ALJ Decision emphasizes that "Chewy's preferred safety measures against the under-ride hazard ... the training and 'extra-wide' aisles *supports a finding of employer recognition of the hazard.*" (Vol. 8, Item 37 (ALJ Decision), at p. 36) (emphasis added). This is not enough. In *Cotter & Co.*, 598 F.2d 911 (5th Cir. 1979), the employer operated warehousing and distribution centers for hardware stores. While the employer required employees to wear shoes that fully covered their feet, and prohibited the use of tennis shoes and sandals, it did not require its employees to wear steel-toed or safety shoes. However, the employer sponsored a program in its plant through which employees who wished to do so could buy steel-toed shoes. About half of the employees had voluntarily purchased steel-toed shoes through the program. *Id.* at 912. In addition, in the two years prior to OSHA's citation, the employer's shipping and receiving personnel had suffered three injuries which involved the foot or toe. *Id.* OSHA issued a citation to the

employer for not requiring employees exposed to possible foot injuries to wear steel-toed shoes. *Id.*

In *Cotter & Co.*, there was no dispute that the employer recognized a hazard—and that it even took some steps to help address that hazard. But as the Court clarified, that is neither the relevant inquiry nor the proper standard in this Circuit for determining "actual knowledge" that additional protective measures are *required* under a general safety measure. The Court determined that there was not substantial evidence to support a finding that the employer had actual knowledge of hazardous conditions *requiring the use* of steel-toed shoes. *Id.* Just as is the case here, the Review Commission had mistakenly affirmed the citation because the employer merely "had actual knowledge of a hazard." *Id.* Indeed, the Secretary and the Review Commission sought to conclude that the employer's "knowledge of a hazard" made industry custom and practice irrelevant in terms of notice of a hazard and a collateral requirement to provide protection for that hazard. *Cotter & Co.*, 598 F.2d at 913-14 (5th Cir. 1979). But the Court made clear that this is not enough. A general OSHA standard or safety measure in this Circuit "is construed as containing the 'reasonable man' test, for otherwise the mandate would not afford a reasonable warning of the proscribed conduct and would not meet constitutional standards." *Cotter & Co.*, 598 F.2d at 913-14 (5th Cir. 1979).

Here, the ALJ Decision is in error because it did not apply the legal standard in this Circuit for an employer's "knowledge" as established in *C&W Facility Services*, *Cotter & Co.,* and related precedent. Even an employer's efforts to address a recognized hazard did *not* establish knowledge of the need for safety shoes where the employer had a record of foot injuries in the previous two years that would have been prevented or mitigated by the use of the safety shoes. *Cotter & Co.*, 598 F.2d at 913 (5th Cir. 1979). The employer in *Donovan v. Gen. Motors Corp.*, 764 F.2d 32, 36 (1st Cir. 1985) had also encouraged employees to used steel-toed safety shoes, but the court determined that the recommendation did not equate to actual knowledge of a hazard *requiring* additional protective measures to comply with an OSHA regulation:

> Furthermore, we cannot agree with the Secretary's contention that, by encouraging its employees to purchase and use steel-toed safety shoes, GM had actual knowledge of hazards existing in its facilities. Although a safety program, in some instances, may be considered as evidence of knowledge that a hazard exists, *see Puffer's Hardware, Inc. v. Donovan,* 742 F.2d 12, 18 (1st Cir. 1984), a safety recommendation made by an employer to its employees *does not establish that the precaution was necessary in order to comply with an OSHA regulation. See United States Steel Corp.,* 82 OSHRC 62/A2, 10 O.S.H. Cas. (BNA) 2123, 2131, 1982 O.S.H. Dec. (CCH) ¶ 26,297, p. 33, 235 (1982).

*Donovan*, 764 F.2d at 36 (1st Cir. 1985) (emphasis added). Similarly, "[t]he Commission and several Courts of Appeals have rejected the notion that actual

knowledge of a hazard requiring personal protective equipment may be established simply by reference to an employer's voluntary safety efforts." *Gen. Motors Corp.*, at 11 BNA OSH Cas. ¶ 2066; *Pemberton Fabricators, Inc.*, 14 OSH Cas. (BNA) ¶ 1608 (OSHRC ALJ Apr. 9, 1990).

Knowledge of the need for particular protective measures also cannot be presumed just because an injury might occur. Rather, actual knowledge "must be established [by showing] that the employer has '*specific, confirmed knowledge'* that personal protective equipment is necessary." *S&H Riggers & Erectors, Inc.*, 659 F.2d at 1285 (quoting *Cotter & Co.*, 598 F.2d at 914-15) (emphasis added). Also, "[i]t is simply not the case that the existence of a hazard necessarily establishes a violation, and the government's citation to the general duty clause is not to the contrary." *United States v. Mar-Jac Poultry, Inc.*, 756 F. App'x 856, 862 (11th Cir. 2018). Under either the general or special duty clause of the Act, "a hazard does not itself establish a violation." *Id.*

The ALJ Decision, which seeks to establish a requirement for certain protective measures to address an under-ride hazard, ignores that there was no fair notice of such an alleged requirement based merely upon an alleged hazard—and appears to impose a vague requirement upon a wide variety of industries despite the absence of any recognized requirement. This approach has been rejected by this Circuit, and should not be permitted here. *See Cotter & Co.*, 598 F.2d 911 (5th Cir.

1979); *B&B Insulation, Inc.,* 583 F.2d 1364 (5th Cir. 1978) (citation vacated because company did not have notice that its conduct might be in violation of general safety measure under personal protective equipment standard). Despite the absence of any specific regulation or industry standard that requires an employer to implement the protective measures, the ALJ Decision would now seem to impose a vague requirement to implement the measures in any warehouse in which lift trucks and other powered industrial trucks are used adjacent to storage racks. The *post hoc* conclusion that the additional protective measures are now required is neither based on any prior decision or directive of which Chewy had notice, or based on any practice or custom identified by the Secretary. The ALJ's Decision is in error because it applies the wrong standard for determining "actual knowledge," and there is not substantial evidence that the Secretary met the applicable standard for "actual knowledge" under *C&W Facility Services* and related precedent in this Circuit. There was not substantial evidence to show that Chewy had actual knowledge of the requirement to implement the protective measures that were proposed by the Secretary after the accident.

The Secretary presented no evidence that implementation of the additional protective measures now proposed by OSHA in this case have risen to the level of industry custom, and the Secretary did not establish that Chewy had *actual knowledge* that an alleged hazard *required* the use of some other or additional

protective measures. *C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*, 22 F.4th 1284, 1285 (11th Cir. 2022); *see also Cotter & Co.,* 598 F.2d at 913 (5th Cir. 1979); *Owens-Corning Fiberglass Corp*., 659 F.2d at 1288 (5th Cir. 1981). The ALJ's Decision should be reversed and the citation should be vacated.

**B.** **The Review Commission Erred By Imposing Non-Mandatory Recommendations In Order to Cite Chewy Under The General Duty Clause**

Contrary to Review Commission precedent, the ALJ Decision improperly relied upon mere recommendations in OSHA's SHIB and in the ANSI guidance to determine that Chewy was required to implement additional protective measures under the general duty clause. The Secretary may not unilaterally impose additional requirements upon an employer based on general, non-mandatory recommendations, particularly in the absence of industry custom or practice, or the employer's actual knowledge that the additional measures are required. The Review Commission has repeatedly confirmed that the general duty clause may not be cited where the Secretary relies on advisory guidance, including recommendations that an employer "should" take certain steps to address a hazard. As discussed in detail in *Secretary of Labor v. A. Prokosch & Sons Sheet Metal, Inc*., 8 OSH Dec. (CCH) ¶ 24840, 1980 WL 10666 (OSHRC 1980), the Review Commission has long held that "an advisory standard cannot be the basis for finding a violation of the Act." *Id.* Consistent with

this well-settled precedent, the Review Commission has made clear that the "general duty clause *cannot be used* to enforce 'should' standards." *Tampa Shipyards, Inc.,* No. 86-360, 1987 WL 89204, at *5 (Oct. 19, 1987); *see also Marshall v. Anaconda Co.*, 596 F.2d 370, 372 (9th Cir. 1979) (citation may not be based on guidance from ANSI that is advisory).

The conclusion in the ALJ Decision that Chewy was required to implement additional protective measures is not based on a finding of industry custom, or on Chewy's actual knowledge, but is instead based on non-mandatory recommendations copied from OSHA's SHIB and the ANSI advisory addressing the under-ride hazard. The SHIB states, "[t]his Safety and Health Information Bulletin is *not a standard or regulation, and it creates no new legal obligations*." (Vol. 4, Ex. C-2, at p. 3) (emphasis added). Furthermore, in recommending various options to address the under-ride hazard, the SHIB merely states "the employer *should* take *one or more* of the following actions," one of which is the training option adopted by Chewy consistent with 1910.178(l). *Id.* The text of the SHIB using "should" rather than "shall" further demonstrating or rendering the options merely advisory. *Secretary of Labor v. A. Prokosch & Sons Sheet Metal, Inc*., 8 OSH Dec. (CCH) ¶ 24840, 1980 WL 10666 (OSHRC 1980); *Marshall v. Anaconda Co.*, 596 F.2d 370, 372 (9th Cir. 1979).

Similarly, the ALJ Decision improperly relied on ANSI guidance, which uses only advisory language and is focused on the manufacturer, to impose a guarding obligation for the lift truck on Chewy. *See* Vol. 4, Ex. C-1, p. 10. Specifically, the relied-on ANSI guidance merely states that "[g]uards or other means *may* be provided as part of the truck to limit intrusions into the operator's area of horizontal members ... ." (ANSI, Section 7.30.1; Vol. 4, Ex. C-1, p. 10) (emphasis added). Indeed, Section 7.30.1 of the ANSI guidance discusses the *option* for the *manufacturer* to install additional guards, and this mere advisory is not even directed at Chewy, the user of the lift truck, but instead to the manufacturer. *See* Vol. 2, Tr. 416-6.

The preamble to the final rule for 1910.178 further confirms that OSHA did not intend for advisory standards governing powered industrial trucks to be treated as mandatory. The final rule contains the following statement:

> I do hereby designate as national consensus standards those standards in Part 1910 which are standards adopted and promulgated by either the American National Standards Institute (ANSI) or the National Fire Protection Association (NFPA)... ***The standards of ANSI and NFPA may also contain advisory provisions and recommendations <u>the adoption of which by employers is encouraged, but they are not adopted in Part 1910</u>***. (36 FR 10466).

*Powered Industrial Trucks*, 68 Fed. Reg. 32367 (June 2, 2003) (emphasis added). An encouragement for an employer to implement additional protective measures

may not be enforced as a requirement under the general duty clause. *Secretary of Labor v. A. Prokosch & Sons Sheet Metal, Inc*., 8 OSH Dec. (CCH) ¶ 24840, 1980 WL 10666 (OSHRC 1980).

There was no evidence that industry custom mandates that shelves on storage racks be adjusted, or that guards be placed on lift trucks, in the manner proposed by OSHA in the citation. There was also no evidence that Chewy had actual knowledge that the additional protective measures had risen to the level of a requirement to address the hazard. Consistent with Review Commission precedent, the advisory statements and recommendations cannot serve as the basis for a violation of a general safety measure such as the general duty clause violation. *A. Prokosch & Sons Sheet Metal*., 8 OSH Dec. (CCH) ¶ 24840, 1980 WL 10666 (OSHRC 1980).

It was erroneous for the ALJ to determine that the additional protective measures that are based on non-mandatory OSHA SHIB and ANSI guidance are now requirements that may be imposed upon Chewy. If OSHA wants to convert an advisory standard into an obligation then it should engage in the proper formal rulemaking procedure. As expressed in *Secretary of Labor v. A.H. Sturgill Roofing, Inc*.:

> The general expectation was that once a hazard was identified through the general duty clause, OSHA would then engage in rulemaking to ensure the hazard was addressed by a standard. *Id*. While practical considerations may have lead OSHA, over the years, to rely on the general duty clause in lieu of setting standards, the

> provision seems to have increasingly become more of a 'gotcha' and 'catch all' for the agency to utilize, which as a practical matter often leaves employers confused as to what is required of them.

*Secretary of Labor v. A.H. Sturgill Roofing, Inc.*, OSHRC Doc. No. 13-0224, fn.9. The Review Commission has explained that if the Secretary believes he is hampered by the conclusion that advisory guidance may not be used to establish a violation, then the Secretary may exercise his "authority to correct the situation through the rulemaking authority given him in" the Act. *A. Prokosch & Sons Sheet Metal, Inc.*, 8 OSH Dec. (CCH) ¶ 24840, 1980 WL 10666 (OSHRC 1980); *see also Amoco Chemicals Corp.*, 1986 WL 53497, 12 OSH Cas. (BNA) ¶ 1849 (OSHRC June 19, 1986) ("[w]e cannot find an employer in violation of the general duty clause for not having done more than required by a specifically applicable standard"). It was error to allow the Secretary to circumvent the rulemaking process, and to impose additional, non-mandatory obligations on Chewy based on a mere advisory.

## C.   The General Duty Clause Is Pre-empted By 29 C.F.R. § 1910.178

Even if the ALJ Decision had found substantial evidence of industry custom or actual knowledge pursuant to *C&W Facility Servs., Inc.*, 22 F.4th 1284 (11th Cir. 2022), and had not imposed requirements based on mere advisory guidance, the ALJ Decision is still in error because the citation under the general duty clause is preempted. The general duty clause was enacted to cover serious hazards to which no specific standard applies, and the Secretary may not cite an employer for violation

of the general duty clause if an OSHA standard covers the condition or practice. *Secretary of Labor v. A.H. Sturgill Roofing, Inc*., 1019 OSH (CCH) ¶ 33712, 1019 WL 1099857 (Feb. 28, 2019). This precedent is entirely consistent with 29 C.F.R. § 1910.5(f), which states "[a]n employer who is in compliance with any standard in this part shall be deemed to be in compliance with the requirements of the [general duty clause], but only to the extent of the *condition*, *practice*, means, method, *operation*, or process is *covered* by the standard." *Id.* (emphasis added). Nothing in the 1910.5(f) regulation states that preemption applies only when the exact hazard or a precise abatement measure is addressed in the standard. Rather, so long as the "condition, practice, [or] operation" that may lead to the hazard is "covered by the standard" then preemption applies. *Id.* The ALJ Decision applied the incorrect legal standard for preemption, and is in error in determining that the general duty clause was not preempted by another standard that does cover the condition, practice, or operation at issue in this matter.

### 1.  *29 C.F.R. § 1910.178 Covers The Condition Or Practice That May Result In An Under-Ride Incident*

29 C.F.R. § 1910.178 covers the condition or practice that may result in an under-ride incident. 1910.178 was most recently amended in 1998. The preamble to an OSHA standard is "the most authoritative evidence of the meaning of [that] standard," *Superior Rigging & Erecting Co*., No. 96-0126, 2000 WL 365285, at *3 (OSHRC Apr. 5, 2000), and the preamble for 1910.178 establishes that a primary

purpose is to address the condition, practice, or operation of running into a structure, such as a storage rack, while operating a powered industrial truck, and that an employer may choose to address this through a variety of methods, including additional training. *Powered Industrial Truck Operator Training*; Final Rule, 63 Fed. Reg. 230 (Dec. 1, 1998). The preamble explains:

> A vehicle that is out of control or being operated by a driver whose view in the direction of travel is restricted can strike an employee, ***run into a column or other part of the building, or strike stored material,*** causing the material to topple and injure employees in the area. ***Effective driver training*** teaches operators to act properly to minimize these hazards to themselves and other employees.
>
> ****
>
> OSHA concludes that, as the above discussion indicates, there are sufficient data and information on which to base a revision of the existing standard for powered industrial truck operator training. The data indicate that a substantial number of fatalities and injuries result from ***industrial truck accidents in all industries***. ***Studies indicate that <u>better training</u> would <u>substantially</u> reduce the number of accidents that result in fatalities and serious injuries.***

*Id*. at 66242 and 66248 (emphasis added).

OSHA's Safety and Health Information Bulletin further confirms that 1910.178 covers the condition or practice of striking a storage rack which may result in an under-ride incident. In that bulletin, OSHA expressly identified the operator training required by 1910.178(l) as one option to address an under-ride incident. *See* Vol. 4, Ex. C-2: Standup Forklift Under-ride Hazards Safety and Health Information

Bulletin, OSHA (SHIB 07-27-2009). The condition, practice, or operation of a lift truck driver running into or striking a storage rack is covered under 1910.178.

The Secretary's own expert agrees. He testified that the revisions to 1910.178 address the condition, practice, or operation of a lift truck that may result in an under-ride incident (Vol. 2, Tr. 434). The Secretary's expert also testified that the under-ride hazard belongs at the top of the list of incidents specifically addressed by 1910.178(l). (*See id*.).

The ALJ Decision also expressly acknowledges that the "training standards at section 1910.178 ... *are geared toward preventing the under-ride*." (Vol. 8, Item 37, at p. 29) (emphasis added). However, the ALJ Decision applies an improper and far too narrow standard for preemption. The ALJ Decision determined that preemption does not apply because 1910.178 does not address *all* of the additional protective measures that could be implemented to address an under-ride incident. *Id.* This was in error. Preemption is not limited to circumstances in which the standard completely eliminates a hazard, or in which the standard identifies every potential means of abatement. OSHA standards are not strict liability standards that require the employer to completely eliminate exposure to a hazard. *W.G. Yates & Sons Constr. Co., Inc. v. Occupational Safety & Health Admin.*, 459 F.3d 604, 606 (5th Cir. 2006) (when drafting the Occupational Safety and Health Act, "Congress quite clearly did not intend…to impose strict liability..."). The Review Commission has reiterated

that training which requires the employee to exercise a degree of judgment is an adequate means of abatement for addressing a particular hazard. *Alabama Power Co.*, 13 OSH Cas. 1240, 1244 (OSHRC 1987).

The conclusion in the ALJ Decision that 1910.178 is not entirely effective does not negate that 1910.178 covers the condition, practice, or operation of striking a storage rack which may result in an under-ride incident, and does not permit the Secretary to circumvent its own regulation by citing the general duty clause. The ALJ Decision applied the wrong standard on preemption by determining the adequacy of the abatement methods in 1910.178 and by opining that additional steps were needed beyond what OSHA determined through rule-making.

### D. <u>Even If Chewy Could Have Been Cited Under The General Duty Clause, The Review Commission Erred In Affirming The Citation</u>

Even if the Secretary could have cited Chewy under the general duty clause, the ALJ Decision applied the wrong standard in determining that the citation was proper.

#### 1. *The Review Commission Applied The Incorrect Standard In Finding That Chewy Did Not Render Its Workplace "Free" Of The Under-Ride Hazard*

To establish a violation of the general duty clause, the Secretary must show, among other things, that the employer failed to render its workplace "free" of recognized hazards. *Secretary of Labor v. Beaird-Poulan*, 7 OSH Cas 1225 (OSHRC 1979). The term "free" does not impose strict liability on employers, but only

imposes a duty capable of achievement. *National Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257, 1265-66 (D.C. Cir. 1973); *accord, Secretary of Labor v. Pelron Corp.*, 12 OSH Cas. (BNA) 1833, 1986-87 OSH Dec. (CCH) ¶ 27605, 1986 WL 53616 (OSHRC 1986). The occurrence of an accident does not establish the existence of a hazardous condition for purposes of proving a violation. *Secretary of Labor v. Beaird-Poulan*, 7 OSH Cas. 1225 (OSHRC 1979).

In *Alabama Power Co.*, the Review Commission affirmed that training which requires the employee to exercise a degree of judgment is an adequate means of abatement. *See* 13 OSH Cas. 1240, 1244 (OSHRC 1987). As part of that effort, the undisputed evidence here was that Chewy properly trained its operator to avoid preventable injuries related to striking the rack and further provided the operator with extra-wide aisles to safely maneuver. No claim was made or evidence offered by the Secretary refuting this evidence. Accordingly, the ALJ erred in finding that Chewy failed to render its workplace "free" of a recognized hazard simply because the hazard was not completely eliminated.

General duty clause citations are not intended to allege that the violation is a failure to implement certain precautions, corrective actions, or other abatement measures that may be proposed by the Secretary, but rather addresses the failure to prevent or remove a particular hazard. The general duty clause does not mandate a particular abatement measure but only requires an employer to render the

workplace free of recognized hazards by any feasible and effective means the employer wishes to use. *See* FOM ch. 4-III-B-2-a. In this case, OSHA cited Chewy because it did not reconfigure its storage rack or install certain guards on its reach trucks, which are alternative methods of abatement identified by OSHA in its non-binding SHIB. *See* Vol. 4, Ex. C-2, at p. 3. The ALJ Decision improperly affirmed the citation under the general duty clause because Chewy did not choose to adopt the abatement methods the Secretary prefers in this case.

Notably, the Secretary took the opposite position on the adequacy of the guards in *Pharmasol Corp.*, No. 16-1172, 2018 WL 5013447 (OSHRC ALJ, Sept. 4, 2018) that it now seeks to impose as means of abatement. The Secretary in *Pharmasol* determined that proposed guards are *unreliable* because they would be ineffective in Chewy's work environment where the trucks normally operate well in excess of one MPH. *Id.* Such inconsistent positions by the Secretary highlight the error of enforcing the Secretary's citation of an alleged failure to abate a hazard based on OSHA's inconsistent preferences. If OSHA wants to require reconfiguring storage racks or installing certain guards then it should go through the proper rulemaking procedure and not rely on the general duty clause to enforce voluntary abatement measures. *See Secretary of Labor v. A.H. Sturgill Roofing, Inc*., OSHRC Doc. No. 13-0224, fn. 9.

**2.**    ***The Review Commission Erred In Finding That The Multiple Means Of Abatement Implemented By Chewy Were Inadequate***

The ALJ Decision erred in finding that the abatement methods undertaken by Chewy were inadequate because they did not entirely "eliminate" the hazard. *See* Vol. 8, Item 37 (ALJ Decision), at pp. 40-41; *Secretary of Labor v. United States Postal Serv.*, 21 OSH Cas. (BNA) 1767, 2005 WL 6407173 (OSHRC 2005), *aff'd*. 2006 WL 6463045 (OSHRC 2006). The Review Commission has held that the method of abatement must materially reduce the hazard but is not required to completely eliminate it. *Id*.

The ALJ Decision confirms that Chewy's "training and aisle width are geared toward preventing an under-ride from occurring" (Vol. 8, Item 37, at p. 41), but then cites the accident and the testimony of OSHA's expert that the training and aisle-width do not completely "eliminate" the hazard to conclude after the fact that Chewy's methods were inadequate. *Id*. In determining that Chewy's methods of addressing the hazard were inadequate under the general duty clause, the ALJ Decision cites no authority for requiring Chewy to completely "eliminate" the hazard. Notably, the record does not support the conclusion that the means of abatement implemented by Chewy were inadequate to materially reduce exposure to an under-ride hazard. An accident does not establish the existence of hazardous

condition for purposes of proving a violation. *Secretary of Labor v. Beaird-Poulan*, 7 OSH Cas. (BNA) 1225 (OSHRC 1979).

### a.    Operator Training Materially Reduced The Hazard

Pursuant to 29 C.F.R. § 1910.178(l) and OSHA's under-ride SHIB, Chewy specifically trains its operators to avoid striking any part of the storage racks by properly instructing the operator to look in the direction of travel, travel at a safe speed, and to safely maneuver while handling a load. *See* Vol. 3, Tr. 687-88. This training specifically addresses the under-ride hazard. *See* Vol. 3, Prater, Tr. 687; Vol. 1, Gage, Tr. 177. In regard to its obligation to train Chewy's operators, the Secretary stipulated that OSHA found no violation of 1910.178(l) during its investigation of Chewy. *See* Vol. 2, Secretary, Tr. 469-70.

Even if the general duty clause were not preempted by 1910.178, the Review Commission has established that employee training that requires an employee to exercise judgment is an adequate means of abatement under the general duty clause. *See Alabama Power Co*., 13 OSH Cas. 1240, 1244 (OSHRC 1987) (training that requires the employee to exercise a degree of judgment is still an adequate means of abatement). The preamble to 1910.178 also states that the required operator training is sufficient to substantially reduce the number of accidents involving powered industrial trucks. *Powered Industrial Trucks*, 68 Fed. Reg. 32367 at 66248 (June 2, 2003).

Because Chewy complied with each of these requirements, the ALJ Decision is in error in finding that Chewy's training program did not materially reduce the under-ride hazard. *See* Vol. 2, Tr. 469-70.

### b.    Wide Aisles Materially Reduced The Hazard

The ALJ Decision is also in error in not finding that Chewy's wide aisles materially reduce the under-ride hazard and therefore provide an adequate means of abatement. Chewy designed the aisles between the storage racks to be extra-wide as an engineering solution to materially reduce the hazard of operators striking the rack by providing the operators additional space to safely maneuver. *See* Vol. 2, Tr. 481-82, 500, 503-04; Vol. 3, Tr. 685-87. The Secretary's expert admitted that Chewy's wide aisles make it much less likely that an operator would strike a storage rack. *See* Vol. 2, Tr. 403.

Unlike OSHA's proposed abatement methods that are premised on a lift truck striking the rack to prevent an under-ride, the Secretary's expert admitted that abating the under-ride hazard by providing operators with wide aisles creates no additional hazards. *See* Vol. 2, Tr. 407-08. The ALJ Decision erred in finding that Chewy's wide aisles are an inadequate means of materially reducing the under-ride hazard.[5]

---

[5] For alleged general duty clause violations, if the list of potential abatement measures are alternatives, the Secretary can only prevail if he proves that none of the measures were implemented by the employer. *Sec'y of Labor, Complainant, v.*

### 3. *The Review Commission Erred In Finding That The Secretary Established The Feasibility And Likely Utility Of The Secretary's Proposed Alternative Means Of Abatement*

The Review Commission erred in finding that the Secretary demonstrated the "feasibility and likely utility" of the alternative abatement methods proposed in the citation. The evidence established that the rear vertical post and extended back rest guards proposed by the Secretary are not rated for Chewy's operation, and create hazards when broken or bent. *See* Vol. 2, Tr. 387, 390-91. The Secretary's proposal to reconfigure the storage racks to have the lift truck strike the storage rack instead of under-riding it ignores the undisputed evidence that the storage rack is not designed to withstand the force of being struck by the reach truck. *Id*. A collapse of a horizontal beam in the storage rack could be catastrophic where the supported load might fall on the operator, which is another hazard addressed by 1910.178 according to its preamble.

---

*UHS of Westwood Pembroke, Inc., UHS of Delaware, Inc., Respondent.,* 2022 OSH Dec. (CCH) ¶ 33872 (OSHRC Mar. 3, 2022), citing *A.H. Sturgill Roofing, Inc.,* No. 13-0224, 2019 WL 1099857 (OSHRC Feb. 28, 2019). Here, just as in *Sturgill*, there are various, voluntary abatement measures that are alternative means of abatement, thus implementing any one of the proposed alternatives would constitute abatement of the alleged violation. *Id.* The record shows that Chewy took measures to adequately address the alleged under-ride hazard by requiring operator training, and by using wider aisles. The Secretary has failed to establish a violation of the general duty clause. *Sec'y of Labor v. United States Postal Serv. Nat'l Ass'n of Letter Carriers*, 21 OSH Cas. (BNA) ¶ 1767 (OSHRC Nov. 20, 2006), citing *Alabama Power Co.,* 13 BNA OSHC 1240, 1987 CCH OSHD ¶ 27892 (No. 84-357, 1987) (citation alleging insufficient safety rules vacated where employer's safety program was not inadequate).

The Secretary was required to specify the steps the employer should have taken to avoid citation and demonstrate the feasibility and utility of those steps. *National Realty & Const. Co., Inc. v Occupational Safety and Health Commission*, 489 F.2d 1257, 1268 (D.C. Cir. 1973). The Secretary was also required to show that the proposed method of abatement does not cause such adverse consequences as to render the abatement infeasible. *Secretary of Labor v. Cheff*, 9 OSH Cas. 1883 (OSHRC 1981); *Secretary of Labor v. Cargill, Inc*., 10 OSH Cas. 1398 (OSHRC 1982).

The employer may rebut the Secretary's showing of feasibility and utility by introducing evidence that the physical means of abatement proposed by the Secretary would create additional dangers. *Royal Logging Co*., 7 OSH Cases 1744, 1751 (OSHRC 1979), *aff'd*, 645 F.2d 822, 9 OSH Cas. 1755 (9th Cir. 1981); *CSA Equip. Co*., 24 OSH Cas. 1476 (OSHRC 2014) (remanding to the ALJ with instructions to consider additional testimony that the proposed abatement method introduced additional hazards to the employees). In this case, each of OSHA's proposed methods of abatement are premised on the operator striking the storage rack—yet this was acknowledged by all the witnesses to be dangerous, including OSHA's expert and compliance officer. *See* Vol. 1, Tr. 117-18, 121; Vol. 2, Tr. 343, 387-88, 390-91, 405, 407-10. In connection with its proposed and voluntary abatement measures, the Secretary offered no formal studies, engineering analysis,

or other statistical evidence to support the ALJ's determination that striking the rack with the force of an automobile traveling 60 MPH is an acceptable manner to abate the under-ride hazard. Just like the Secretary in *Pharmasol*, Chewy had determined the proposed guards were unreliable because they would be ineffective in Chewy's work environment where the trucks normally operate well in excess of one MPH. *See* Vol. 3, Tr. 698-99, 747-50. The manufacturer, Raymond, had also noted that the proposed guards "reduce visibility" and "increase pinch, shear, crush and contact points." *See* Vol. 6, Ex. J-5, at p. 8; Vol. 3, Tr. 700, 761-62. And Raymond had identified additional hazards created by guards by noting they "will increase the turn radius for some models of trucks" and also create "additional hazards for drive-in racks and other narrow operations." *See* Vol. 6, Ex. J-5, at p. 8. Consistent with this, OSHA's compliance officer acknowledged that a rear vertical post that limits the operator's visibility would not be an acceptable guard. *See* Vol. 1, Tr. 142-43. Finally, the compliance officer admitted that a guard which creates a pinch-point would also not be an acceptable guard. *Id*. The Review Commission erred in accepting these proposed methods of abatement, and in affirming the citation under the general duty clause.

## VI.    <u>CONCLUSION</u>

For all of the foregoing reasons, Chewy, Inc. respectfully requests that this Court reverse the Review Commission's decision and order that the Secretary's citation be vacated.

Respectfully submitted this 1st day of September, 2022.

Respectfully submitted,

**LITTLER MENDELSON, P.C.**

*/s/ Thomas M. Metzger*
Thomas M. Metzger
41 South High Street, Suite 3250
Columbus, OH  43215
Telephone:  614.463.4216
Facsimile:   614.573.9795
E-mail:      tmetzger@littler.com

West Holden
111 North Orange Avenue, Suite 1750
Orlando, FL  32801
Telephone:  407.393.2952
Facsimile:   407.393.2929
E-mail:      wholden@littler.com

*Attorneys for Petitioner*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 12,953 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typefaces using Microsoft Word in Times New Roman, with size 14.

*/s/ Thomas M. Metzger*
An Attorney for Petitioner

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 1st day of September, 2022, I electronically filed

the foregoing **Brief Of Petitioner Chewy, Inc.** with the Clerk of the Court using the

CM/ECF system which sent notification of such filing to parties of record.


*/s/ Thomas M. Metzger*
An Attorney for Petitioner

4890-8094-5455.16 / 112003-1029