In The

# United States Court of Appeals
## For The Eleventh Circuit

---

Case No. 22-11626

---

CHEWY, INC.,
Petitioner

v.

UNITED STATES DEPARTMENT OF LABOR,
Respondent

---

On Petition for Review from the United States
Occupational Safety and Health Review Commission,
OSHRC Docket No. 19-0868

---

**BRIEF OF *AMICUS CURIAE* RETAIL LITIGATION CENTER, INC.
IN SUPPORT OF PETITIONER AND REVERSAL**

---

Deborah R. White
Kathleen McGuigan
Susan Kirsch
RETAIL LITIGATION CENTER, INC.
99 M Street, SE Suite 700
Washington, DC 20003

Eric J. Conn
CONN MACIEL CAREY LLP
5335 Wisconsin Ave., NW, Suite 660
Washington, DC 20015
(202) 909-2737
econn@connmaciel.com

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ..................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

ARGUMENT .................................................................. 5

  I.  OSHA Is Preempted from Citing the General Duty Clause for the PIT Under-Ride Hazard Because OSHA Promulgated a Standard To Address that Hazard. ........................................................ 5

    A.  OSHA's PIT Standard (29 C.F.R. §1910.178) Was Promulgated To Address Hazards Associated with PIT Operations, Including the Under-Ride Hazard. ........................................ 6

    B.  OSHA Must Use APA Rulemaking To Amend a Standard It Believes Is Inadequate, And Cannot Shoehorn In New Requirements Through General Duty Clause Enforcement. .................. 9

  II.  Even if the Performance-Oriented General Duty Clause Could Apply, Fair Notice Requires Consideration of Industry Customs and Standards To Determine Compliance. ........................................ 11

    A.  The Retail Industry's Custom and Practice Is To Follow Section 1910.178 To Address The PIT Under-Ride Hazard. .......................... 15

    B.  The Retail Industry's Custom and Practice Is to Address the PIT Under-Ride Hazard by Primarily Focusing on the PIT Operator Training Requirements of Section 1910.178. ...................... 16

    C.  OSHA Guidance on the PIT Under-Ride Hazard Undercuts OSHA's Position. .................................................. 18

CONCLUSION ............................................................... 21

CERTIFICATE OF COMPLIANCE ................................................ 22

CERTIFICATE OF SERVICE ................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Ala. Power Co. v. Sec'y of Labor*,
1987 OSAHRC LEXIS 92 (O.S.H.R.C. Apr. 17, 1987) ............................ 17-18

*Amoco Chemicals Corp. v. Sec'y of Labor,*
12 O.S.H. Cas. 1849 (1986), 1986 OSAHRC LEXIS 108 (OSHRC
June 19, 1986) ........................................................................................ 10

*B & B Insulation v. OSHRC*,
583 F.2d 1364 (5th Cir. 1978) ................................................... 13, 14

*BMW of N. Am. v. Gore*,
517 U.S. 559, 116 S. Ct. 1589 (1996) ........................................... 12

*C&W Facility Servs. v. Sec'y of Labor*,
22 F.4th 1284 (11th Cir. 2022) ............................................. 3, 13, 14

*ComTran Grp., Inc. v. Dep't of Labor*,
722 F.3d 1304 (11th Cir. 2013) ..................................................... 11

*Cotter & Co. v. Occupational Safety & Health Review Com*,
598 F.2d 911 (5th Cir. 1979) ..................................................... 13, 15

*Diamond Roofing Co. v. OSHRC*,
528 F.2d 645 (5th Cir. 1976) ..................................................... 12, 13

*Eller-Ito Stevedoring Co. v. Sec'y of Labor*,
567 F. App'x 801 (11th Cir. 2014) ................................................ 11

*Fla. Mach. & Foundry, Inc. v. OSHRC*,
693 F.2d 119 (11th Cir. 1982) ............................................... 13, 14, 15

*McElroy Electronics Corp. v. FCC*,
990 F.2d 1351 (D.C. Cir. 1993) ..................................................... 12

*Rollins Envtl. Servs., Inc. v. U.S. EPA*,
937 F.2d 649 (1991) ...................................................................... 12

*S & H Riggers & Erectors, Inc. v. OSHRC*,
659 F.2d 1273 (5th Cir. 1981) ................................................... 13, 14

*Sec'y of Labor v. A. Prokosch & Sons Sheet Metal, Inc.*,
   8 OSH Dec. (CCH) ¶ 24840, 1980 WL 10666 ................................................. 20

*Sec'y of Labor v. Active Oil Serv.*,
   2005 OSAHRC LEXIS 49(O.S.H.R.C. July 15, 2005) .................................. 5, 9

*Sec'y of Labor v. Bisk Waterproofing Co.*,
   1 O.S.H. Cas. (BNA) 1263, 3 OSAHRC 1132, 1973 WL
   4103 (O.S.H.R.C. 1973) .................................................................................. 5

*Sec'y of Labor v. Daniel International, Inc.*,
   10 O.S.H. Cas. 1556, 1982 OSH Dec. (CCH) P 26033, 1982 WL
   22610 (OSHRC 1982) .................................................................................... 10

*Sec'y of Labor v. John T. Brady & Co.*,
   10 OSH Cas. 1385, 1982 OSH Dec. P 25941, 1982 WL 22589
   (OSHRC 1982) .............................................................................................. 10

*Sec'y of Labor v. New York State Elec. & Gas Corp.*,
   17 BNA OSHC 1129, 1993-95 CCH OSHD P30,745 (No. 91-2897,
   1995), *aff'd in pertinent part*, 88 F.3d 98 (2d Cir. 1996) ............................. 5, 9

*Sec'y of Labor v. Sun Shipbuilding & Drydock Co.,*
   4 OSAHRC 1020 (O.S.H.R.C. 1973) ............................................................ 5, 9

*Sec'y of Labor v. Superior Rigging & Erecting Co.*,
   No. 96-0126, 2000 WL 365285 ........................................................................ 8

*Sec'y of Labor v. Tampa Elec. Co.*,
   OSHRC Docket No. 17-2144, 2019 CCH OSHD ¶ 33722, 2019
   WL 1601695 (Mar. 15, 2019) ........................................................................ 14

*Sec'y of Labor v. Tampa Shipyards, Inc.*,
   1987 WL 89204 (Oct. 19, 1987) .................................................................... 20

*Sec'y of Labor v. Ted Wilkerson, Inc.*,
   9 BNA O.S.H. Cas. (BNA) 2012, 1981 CCH OSHD P25,551,
   (No. 13390, 1981) ........................................................................................ 5, 9

**Statutes**

5 U.S.C. § 552 .................................................................................................... 8

29 U.S.C. § 654(a)(1) and OSH Act of 1970 § 5(a)(1) ......................................1, 13

OSH Act of 1970 § 6(b) .......................................................................... 3, 8, 10

**Regulations**

29 C.F.R. § 1910.178 ........................................................................... 6, 15

29 C.F.R. § 1910.178(a)(1) ......................................................................... 2

29 C.F.R. § 1910.178(l) ....................................................................... 8, 16, 19

29 C.F.R. § 1910.178(n) and (n)(6) ...................................................... 19

**Other**

39 Fed. Reg. 23502 (June 27, 1974) ......................................................... 6

63 Fed. Reg. 230 (Dec. 1, 1998) ....................................................... 6, 7, 8, 9, 17

Albert C. Lin, *What Notice is Required of Civil Regulations?*,
    55 Baylor L. Rev. 991, 1006 (2003) ................................................... 13

Data & Statistics/General Duty Standard Search, available at www.osha.gov/
    pls/imis/GeneralSearch.search?p_logger=1&stdquery=damage+and+
    storage+rack&naics=&sic=&Office=All&endmonth=09&endday=04&
    endyear=2017&startmonth=09&startday=04&startyear=2022&category
    =&InspNr= ............................................................................................ 4

U.S. Dep't of Labor, OSHA, Directorate of Technical Support and
    Emergency Management, Office of Science and Technology
    Assessment, *Standup Forklift Under-ride Hazards Safety and Health
    Information Bulletin, SHIB 07-27-2009, available at* https://www.
    osha.gov/sites/default/files/publications/shib072709.pdf..................... 18, 19, 20

*S. Rep. No. 91-1282, 91st Cong., 2d Sess.* at 9, 10 (1970) ...................................... 5

**BRIEF OF THE RETAIL LITIGATION CENTER, INC. AS *AMICUS CURIAE* IN SUPPORT OF PETITIONER AND REVERSAL[1]**

The Retail Litigation Center, Inc. respectfully submits this brief as *amicus curiae* in support of Petitioner, Chewy, Inc. ("Petitioner") and in support of reversing the decision of the U.S. Occupational Safety and Health Review Commission's ("Review Commission") Administrative Law Judge who affirmed a citation issued by the U.S. Occupational Safety and Health Administration ("OSHA").

## INTRODUCTION AND SUMMARY OF ARGUMENT

Respondent OSHA cited Petitioner Chewy, Inc. for allegedly violating Section 5(a)(1) of the Occupational Safety and Health Act of 1970 ("OSH Act"), commonly referred to as the "General Duty Clause" – because Petitioner did not implement particular voluntary abatement actions OSHA said would materially reduce the hazard that can occur when an employee rides a powered industrial truck ("PIT") under a storage rack. The abatement methods identified by OSHA involved retrofitting Petitioner's PITs with new guards, posts, or higher seatbacks and/or reconfiguring the metal storage racks in Petitioner's DCs to lower the bottom crossbeam. However, these proposed abatement measures are not required

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus curiae* affirms that no party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund the preparation or submission of the brief; and that no person other than the *amicus curiae*, its members, or its counsel contributed money that was intended to fund the preparation or submission of the brief.

by the applicable OSHA standard, and the OSH Act's General Duty Clause cannot
be used to alter or supplement the requirements of an existing OSHA standard –
instead, OSHA must engage in rulemaking to change these requirements.[2]

OSHA promulgated a standard at 29 C.F.R. §1910.178, entitled "Powered
industrial trucks," ("PIT Standard") with the purpose of setting "safety
requirements relating to … design, maintenance, and *use of* fork trucks, …
platform lift trucks, … and other specialized industrial trucks…." 29 C.F.R.
§1910.178(a)(1). OSHA's preamble and other guidance related to Section
1910.178 make clear that OSHA intended the PIT Standard to address the hazards
associated with PIT operations, including the under-ride hazard. The PIT Standard
requires extensive operator training, specific safe operating techniques, and sets
minimum aisle widths, all of which were designed by OSHA (with input from the
regulated community) to ensure that PITs can move between storage racks without
striking or moving under the racking systems. Section 1910.178 does not require
PITs to be retrofitted or storage racks to be reconfigured in the manner OSHA
alleged in the citation in this case, nor does any other OSHA standard.

The General Duty Clause does not provide authority for OSHA to impose
new, different, or additional requirements to address hazards already covered by

---

[2] *Amicus* adopts and endorses the full "Statement of the Case" presented in the "Brief for Petitioner." *Brief for Petitioner at 3-9, Chewy, Inc. v. U.S. Department of Labor, (No. 22-11626, September 1, 2022)*

one or more existing standards. To the contrary, the General Duty Clause is available to provide protections *where no OSHA standard applies*. Using the General Duty Clause to impose additional PIT safety requirements, as the Secretary attempts in this case, would be quintessential "back door rulemaking" – establishing new requirements that have not gone through the notice-and-comment process mandated by Section 6(b) of the OSH Act and the APA.

Even if no existing standard regulated under-ride hazards, OSHA still cannot use the OSH Act's General Duty Clause to justify the new requirements at issue here. This Court has made clear that compliance with performance-oriented OSHA requirements, like the OSH Act's General Duty Clause, is measured by the custom or standard practice established by the employer's industry. *See C&W Facility Servs. v. Sec'y of Labor*, 22 F.4th 1284, 1288 (11th Cir. 2022) (finding that in order "to hold an employer liable under a performance standard, the Secretary must prove ... that the protective measure is industry custom ...."). The retail industry's established custom to address the PIT under-ride hazard is to rely on measures set forth in the PIT Standard, including robust, regular and frequent PIT operator training  the safety practices necessary to prevent under-riding (including looking in the direction of travel; operating and navigating turns at a safe speed; maintaining control of the PIT; prohibitions against striking storage racks; etc.), as well as adhering to OSHA requirements for maintaining aisles of sufficient width

to ensure PITs have room to maneuver without striking or moving under racking systems. The alternative, voluntary abatement measures at the core of OSHA's citation simply have not been widely recognized as necessary in the retail industry. Accordingly, the General Duty Clause cannot be used to require industry to implement these measures.

Finally, by issuing the citation, OSHA violated a fundamental tenet of due process that requires OSHA to provide fair notice to the regulated community of applicable legal requirements. The retail industry as a whole lacked notice of the engineering reconfiguration requirements that OSHA now alleges are mandatory to address the PIT under-ride hazard. In fact, to the extent the retail industry was aware of these measures as optional tools to address the under-ride hazard, they were not widely adopted, and in fact, they were recognized as increasing the occurrence of contact between PITs and storage racks, which can pose a separate set of significant risks that has been documented by OSHA.[3]

Accordingly, for these reasons, which are addressed in greater detail below, the ALJ's Decision should be reversed and the citation vacated.

---

[3] A search of OSHA's enforcement database for citations issued in the last 5 years that include the terms "storage rack" and "damage" reveals more than sixty citation summaries. Examples include descriptions such as: "workers on foot and or operating powered industrial equipment were exposed to struck by and crushing hazards where the loaded industrial storage racks were visibly damaged by powered industrial trucks"; "EEs were exposed to collapse and struck by hazards caused by damaged pallet rack systems"; and "Metal storage rack and their contents could collapse as a result of stanchions and diagonal bracing being damaged and bent." OSHA.gov webpage: Data & Statistics/General Duty Standard Search, available at https://www.osha.gov/pls/imis/GeneralSearch.search?p_logger=1&stdquery=damage+and+storage+rack&naics=&sic=&Office=All&endmonth=09&endday=04&endyear=2017&startmonth=09&startday=04&startyear=2022&category=&InspNr=.

## ARGUMENT

**I.    OSHA Is Preempted from Citing the General Duty Clause for the PIT Under-Ride Hazard Because OSHA Promulgated a Standard To Address that Hazard.**

It is well-established that Congress included the General Duty Clause as a "catch all" provision to cover serious hazards *for which no specific OSHA standard applies*. *Sec'y of Labor v. Bisk Waterproofing Co.*, 1 O.S.H. Cas. (BNA) 1263, 3 OSAHRC 1132, 1973 WL 4103 (O.S.H.R.C. 1973); *Sec'y of Labor v. Active Oil Serv.*, 2005 OSAHRC LEXIS 49, *4 (O.S.H.R.C. July 15, 2005); *citing Sec'y of Labor v. New York State Elec. & Gas Corp.,* 17 BNA OSHC 1129, 1993-95 CCH OSHD P30,745 (No. 91-2897, 1995), *aff'd in pertinent part,* 88 F.3d 98 (2d Cir. 1996); *Sec'y of Labor v. Ted Wilkerson, Inc.,* 9 BNA O.S.H. Cas. (BNA) 2012, 1981 CCH OSHD P25,551, (No. 13390, 1981); *Sec'y of Labor v. Sun Shipbuilding & Drydock Co.,* 1 BNA OSHC 1381, 1973-74 CCH OSHD P16,725 (No. 161, 1973). *See also* S. Rep. No. 91-1282, 91st Cong., 2d Sess. at 9, 10 (1970). A citation under the General Duty Clause is therefore impermissible where OSHA has promulgated a standard addressing the same hazard. *See Active Oil Service, Inc.*, 2005 OSAHRC LEXIS 49 at *4 (O.S.H.R.C. July 15, 2005) ("[S]ection 5(a)(1) cannot apply if a standard specifically addresses the hazard cited."); *see also Sun Shipbuilding & Drydock Co.*, 4 OSAHRC 1020 (O.S.H.R.C. 1973) (vacating General Duty Clause citation where a specific standard applied).

### A. OSHA's PIT Standard (29 C.F.R. §1910.178) Was Promulgated To Address Hazards Associated with PIT Operations, Including the Under-Ride Hazard.

The PIT Standard (29 C.F.R. §1910.178), originally promulgated in 1974, was one of OSHA's first safety standards. *See* 39 Fed. Reg. 23502 (June 27, 1974). The standard was designed to address various safety aspects of PITs through design specifications, guarding, proper labelling, and other express requirements. Over the nearly fifty years since its original promulgation, OSHA has utilized notice-and-comment rulemaking to amend Section 1910.178 multiple times to establish new requirements to address the hazards associated with PIT operations and to expand the standard's scope and purpose. Importantly, in December 1998, OSHA revised Section 1910.178 to add a new subpart (l) that established new mandatory PIT operator training requirements to reduce PIT operating hazards, including specifically the risks associated with operating PITs around storage structures. *See* PIT Operator Training; Final Rule, 63 Fed. Reg. 230 (Dec. 1, 1998).

Prior to the 1998 revision of the PIT Standard, OSHA had no standard regulating the unsafe operation of PITs that resulted in PITs striking obstacles, like storage racks, so the agency relied on the General Duty Clause to issue citations for deficiencies associated with that hazard. *See* Powered Industrial Truck Operator Training; Final Rule, 63 Fed. Reg. 230 at 66242, 66247 (Dec. 1, 1998) ("OSHA [] analyzed the citations that were issued between 1979 and 1984 for violations of the

general duty clause.... Sixty-five general duty clause citations involved powered industrial truck operation … because the dangerous condition did not appear to be covered by a specific requirement in Section 1910.178."). Recognizing the importance of reducing hazards posed by PITs inadvertently striking storage rack systems or backing under them, OSHA, through its formal rulemaking process, established intensive training obligations in subpart (l) to ensure employers properly train employees on the safe operation of PITs around pedestrians, other PITs, and other physical obstacles, like metal storage racks. *Id.* at 66242. Specifically, the preamble to the final 1998 updates to the PIT Standard stated, in pertinent part:

> *Section III. Powered Industrial Trucks Hazards*
>
> A vehicle that is out of control or being operated by a driver whose view in the direction of travel is restricted can strike an employee, run into a column or other part of the building, or strike stored material, causing the material to topple and injure employees in the area. *Effective driver training teaches operators to act properly to minimize these hazards to themselves and other employees.*
>
> *          *          *          *
>
> OSHA concludes that, as the above discussion indicates, there are sufficient data and information on which to base a revision of the existing standard for [PIT] operator training. The data indicate that a substantial number of fatalities and injuries result from industrial truck accidents in all industries. Studies indicate that *better training would substantially reduce the number of accidents that result in fatalities and serious injuries.*

-7-

*Id.* (emphasis added).[4]

While the Secretary now disputes that subpart (l) of the PIT Standard addresses a PIT under-ride hazard, as noted in Petitioner's opening brief before this Court, OSHA's own compliance safety and health officer and its designated expert witness in this case both admit that the PIT operator training requirements of Section 1910.178(l) specifically address the under-ride hazard. *See Brief for Petitioner* at 8, *citing* (Vol. 1, Tr. 115-16; Vol. 2, Tr. 434). The Secretary's expert also testified before the OSHA rulemaking committee on the subpart (l) revisions to the PIT standard, where he insisted that not only does Section 1910.178(l) specifically address the under-ride hazard, but that the under-ride hazard belongs at the top of the list of hazards specifically intended to be addressed by the Section 1910.178(l) training requirements. *See Id.* (citing ALJ Decision at p. 29).

Accordingly, with a standard in place intended to address the PIT under-ride hazard, the Secretary has established employers' compliance obligations related to that hazard. Those exist in, and only in, the PIT Standard that OSHA promulgated pursuant to its authority under the OSH Act's Section 6(b) and the Administrative Procedure Act, 5 U.S.C. § 552 ("APA"), and incorporated in the Code of Federal Regulations. Well-established case law prevents OSHA from circumventing its

---

[4] "[T]he preamble to a standard is the most authoritative evidence of the meaning of the standard." *Sec'y of Labor v. Superior Rigging & Erecting Co.,* No. 96-0126, 2000 WL 365285, at * 3 (OSHRC Apr. 5, 2000).

own standards through the General Duty Clause enforcement. *See Active Oil Serv.*, 2005 OSAHRC LEXIS 49, *4 (O.S.H.R.C. July 15, 2005) (explaining "[i]t is well established that section 5(a)(1) cannot apply if a standard specifically addresses the hazard cited.") *See, e.g., New York State Elec. & Gas Corp.,* 17 O.S.H. Cas. (BNA) 1129, 1993-95 CCH OSHD P30,745 (No. 91-2897, 1995), *aff'd in pertinent part,* 88 F.3d 98 (2d Cir. 1996); *Ted Wilkerson, Inc.,* 9 O.S.H. Cas. (BNA) 2012, 1981 CCH OSHD P25,551, (No. 13390, 1981); *Sun Shipbuilding & Drydock Co.,* 1 BNA OSHC 1381, 1973-74 CCH OSHD P16,725 (No. 161, 1973). Once the PIT operator training provisions in subpart (l) and the safe operation requirements of subpart (n) were promulgated, OSHA had a standard for holding employers accountable for hazards associated with operating PITs around racking systems. *See* PIT Operator Training; Final Rule, 63 Fed. Reg. 230 (Dec. 1, 1998). Use of the General Duty Clause for that purpose is preempted.

> **B. OSHA Must Use APA Rulemaking To Amend a Standard It Believes Is Inadequate, And Cannot Shoehorn In New Requirements Through General Duty Clause Enforcement.**

The Secretary argues that Section 1910.178 does not limit OSHA's authority to cite the General Duty Clause because the PIT Standard is inadequate to address the under-ride hazard. Even if the Secretary is correct that additional measures not required by OSHA's current PIT Standard would further reduce a potential under-ride hazard, the Review Commission has held that citation under the General Duty

Clause is improper even where the applicable standard is inadequate, because that would circumvent the agency rulemaking process. *See Amoco Chemicals Corp. v. Sec'y of Labor*, 12 O.S.H. Cas. 1849 (1986), 1986 OSAHRC LEXIS 108 (OSHRC June 19, 1986) ("[w]e cannot find an employer in violation of the general duty clause for not having done more than required by a specifically applicable standard"); *see also Sec'y of Labor v. Daniel International, Inc*., 10 O.S.H. Cas. 1556, 1982 OSH Dec. (CCH) P 26033, 1982 WL 22610 (OSHRC 1982); *Sec'y of Labor v. John T. Brady & Co.*, 10 OSH Cas. 1385, 1982 OSH Dec. P 25941, 1982 WL 22589 (OSHRC 1982) (General Duty Clause citations are improper even where the standard is only partially applicable and of limited utility in abating the hazard).

If OSHA now believes that subpart (l) and subpart (n) are inadequate to address the under-ride hazard, the OSH Act provides the agency with legal authority to impose new requirements on the industry. That authority does not emanate from the OSH Act's General Duty Clause, but instead, it is found in the agency's rulemaking authority under Section 6(b) of the OSH Act. Section 6(b) rulemaking is not only the proper mechanism available to the Secretary to impose new mandatory racking or PIT design requirements, but the *only* lawful

mechanism.[5] OSHA's numerous rulemakings to amend Section 1910.178 over the years demonstrate that the agency is aware of and can use this authority.

Importantly, section 6(b) rulemaking, conducted pursuant to the APA, provides the regulated community fair notice of any new requirements, and an opportunity to provide useful information to the agency regarding the feasibility, potential risk reduction, and/or unintended impacts of such new proposed requirements. Input from the retail industry and other stakeholders is critical for ensuring that any future revisions to the PIT Standard enhance worker safety and can be readily implemented across all industries using PITs.

## II. Even if the Performance-Oriented General Duty Clause Could Apply, Fair Notice Requires Consideration of Industry Customs and Standards To Determine Compliance.

Even if the General Duty Clause was not preempted by Section 1910.178, the ALJ in the underlying case applied the wrong standard to evaluate whether the Secretary had established a violation. To establish a violation of the General Duty Clause, the Secretary must prove among other elements "*that the employer 'knowingly disregarded' the Act's requirements*." *Eller-Ito Stevedoring Co. v. Sec'y of Labor*, 567 F. App'x 801, 803 (11th Cir. 2014) (emphasis added); *ComTran Grp., Inc. v. Dep't of Labor*, 722 F.3d 1304, 1307-08 (11th Cir. 2013).

---

[5] If OSHA wanted to use the General Duty Clause to address hazards associated with unsafe PIT operations, it would first need to rescind Section 1910.178. Such rescission also requires formal notice-and-comment rulemaking.

Performance-oriented legal requirements – whether they are in the form of regulations and standards promulgated by agencies or statutory provisions enacted by Congress – provide both benefits and challenges. On the one hand, they give the regulated community flexibility to develop and implement effective mechanisms tailored to the unique characteristics of their workplaces or industries. On the other, their very lack of specificity can create serious questions of fair notice as to the obligations that are imposed by the legal requirement.[6] Accordingly, due process concerns weigh heavily in the evaluation of compliance with a performance-oriented requirement. Precedent of this Circuit and others informs the analysis of the "knowledge" element.

In the context of OSHA requirements, for instance, this Circuit vacated a citation issued to a roofer for not providing a railing on an open roof where the cited standard required railings on "open-sided floors, platforms, and runways." *Diamond Roofing Co. v. OSHRC*, 528 F.2d 645 (5th Cir. 1976). The Court found the roofing industry did not have sufficient notice that the requirement applied to roofs, "given the absence of any mention of roofs in the regulation . . . and given

---

[6] It is a bedrock principle of legal jurisprudence that fair notice of legal obligations must be given to citizens where penalties can be imposed for violation of those obligations. *See BMW of N. Am. v. Gore*, 517 U.S. 559, 574, 116 S. Ct. 1589, 1598 (1996). (explaining "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty....") Fair notice imposes a burden on administrative agencies to ensure that their regulatory requirements provide "ascertainable certainty" as to what is required. *Rollins Envtl. Servs., Inc. v. U.S. EPA*, 937 F.2d 649, 655 (1991). Fair notice requirements imposed on regulatory agencies examine "not … the reasonableness of the [agency's] intended interpretation, but [rather] … the clarity with which the agency made that intent known." *See McElroy Electronics Corp. v. FCC*, 990 F.2d 1351, 1358 (D.C. Cir. 1993).

the regulation's failure to define 'open-sided floor,' 'platform,' or 'runway' to include roofs ...." Albert C. Lin, *What Notice is Required of Civil Regulations?*, 55 Baylor L. Rev. 991, 1006 (2003), *citing Diamond Roofing Co.*, 528 F.2d at 647-50.

The OSH Act's General Duty Clause is the ultimate "performance-oriented" OSHA requirement: it identifies an objective – maintaining a workplace free of recognized serious hazards – but does not specify the particular means employers must adopt to accomplish that objective. *See* 29 U.S.C. § 654(a)(1). To address the notice concerns inherent with performance-oriented OSHA requirements, this Circuit has held that the Secretary can meet its burden of demonstrating that an employer knowingly disregarded a requirement only where the Secretary can produce evidence that the employer's industry regards the requisite hazard reduction measure as appropriate under the circumstances. *See C&W Facility Servs.* at *1288*, *citing Fla. Mach. & Foundry, Inc. v. OSHRC, United Steelworkers of Am., AFL-CIO, & Local Union 8115, 36*, 693 F.2d 119, 120 (11th Cir. 1982) (An agency's requirement "of this generality requires *only those protective measures which the employers' industry would deem appropriate under the circumstances*.") (emphasis added); *see also S & H Riggers & Erectors, Inc. v. OSHRC,* 659 F.2d 1273, 1285 (5th Cir. 1981); *Cotter & Co. v. OSHRC*, 598 F.2d 911, 913-14 (5th Cir. 1979); *B & B Insulation v. OSHRC*, 583 F.2d 1364 (5th Cir. 1978). Specifically, the Eleventh Circuit:

"…resolves the problem of fair notice [related to performance-oriented requirements] with a heightened knowledge requirement. That is, to hold an employer liable under a performance standard, the Secretary must prove either that the protective measure is industry custom or that the employer had 'actual knowledge[7] that a hazard requires the use of some other or additional [safety measure].'"

*C&W Facility Servs.* at 1287-88, *citing Fla. Mach. & Foundry*, 693 F.2d at 120.

The Review Commission acknowledges that this Circuit's standard for proving a violation of performance-oriented requirements is more exacting than that used by the Review Commission itself. As discussed in *Sec'y of Labor v. Tampa Elec. Co.*, the binding precedent in the Eleventh Circuit "*differs* from that of the Commission's reasonable person test" in that:

[w]hile Commission precedent holds that industry custom and practice are useful points of reference but are not controlling, the [old] Fifth Circuit has stated that, when a reasonable person test is used to determine what is required under a general standard, there should be a *close identification* between the projected behavior of the reasonable person *and the customary practice of employers in the industry*.

OSHRC Docket No. 17-2144, 2019 CCH OSHD ¶ 33722, 2019 WL 1601695, at **5-6 (Mar. 15, 2019) (emphasis added)*, citing B & B Insulation*, 583 F.2d at 1370 (5th Cir. 1978)*, and S & H Riggers & Erectors, Inc.,* 659 F.2d 1273 (5th Cir. 1981) (in the absence of a clear articulation by the Commission of circumstances when

---

[7] As *Amicus* submits this brief on behalf of the retail industry rather than a specific party, this brief does not address the issue of Petitioner's "actual knowledge," but focuses instead on the "industry custom" aspect of the Eleventh Circuit's standard.

industry practice is not controlling, due process requires showing that employer failed to provide what is customarily required in its industry); *see also Fla. Mach. & Foundry,* 693 F.2d at 120 (11th Cir. 1982)*; Cotter & Co.,* 598 F.2d at 913-14 (5th Cir. 1979)*.*

This Circuit's standard for employer knowledge appropriately controls the review of this case, and precedent here correctly places a heightened burden on the Secretary to demonstrate that the industry treats the proposed measure as appropriate and customary. As explained below, the industry custom is to comply with the requirements of Section 1910.178. OSHA failed to establish any other industry custom. Accordingly, the General Duty Clause citation must be vacated.

### A. The Retail Industry's Custom and Practice Is To Follow Section 1910.178 To Address The PIT Under-Ride Hazard.

OSHA admits that Petitioner complied with the training and other elements of the PIT Standard at Section 1910.178 *et seq*., but nonetheless issued a citation to Petitioner for an alleged unsafe PIT operation under the OSH Act's General Duty Clause for failing to adopt specific additional abatement measures: (1) retrofitting PITs with new guards, posts, or higher seatbacks; or (2) lowering the lowest crossbeam of its storage racks. *See Brief for Petitioner* at Page 8 (*citing* Vol. 2, Tr. 469-70; Vol. 8, Item 37 (ALJ Decision), at p. 27)). OSHA posited that these additional abatement actions can prevent a PIT from sliding under the racking

system because some portion of the retrofitted PIT would necessarily strike the metal of the storage racks before moving under the rack.

*Amicus* writes here to advise that, based on its familiarity with and knowledge of the retail industry, these additional abatement measures have not been widely adopted in DCs in the retail industry and, therefore, cannot be deemed "customary" within the meaning of this Circuit's precedent. Not surprisingly, then, the Secretary introduced no evidence of a retail industry custom to retrofit PITs or reconfigure storage racks. Indeed, the record evidence suggests that not only are PIT retrofits *not* customary, but that major PIT manufacturers are disinclined to approve such modifications because they may create other hazards. *Brief for Petitioner at* Page 6-7. Lowering cross-beams on storage racks can increase the likelihood of PITs striking storage racks and, therefore, is not widely implemented by employers operating DCs or companies supplying equipment utilized in DCs.

**B.    The Retail Industry's Custom and Practice Is to Address the PIT Under-Ride Hazard by Primarily Focusing on the PIT Operator Training Requirements of Section 1910.178.**

*Amicus'* knowledge of retail industry practice reveals the principal measure to minimize PIT under-ride hazards is comprehensive PIT operator training that complies with or exceeds the requirements of Section 1910.178(l). Recognizing that operating PITs will require operators to exercise judgment in various real-world situations, *Amicus'* member retailers train their operators pursuant to Section

1910.178(l) to avoid riding PITs into the boundaries of storage racks (i.e., striking the racks or riding underneath them), to look in the direction of travel, to travel at safe speeds, to safely maneuver while handling a load, and to navigate within aisles safely, among other topics. In short, consistent with Section 1910.178, retailers train their operators about and how to avoid PIT under-ride hazards.

Retailers conduct PIT operator safety training at least every three years, and for most of *Amicus'* members, it is conducted more frequently. For example, PIT operators are regularly observed and retrained as needed when supervisors observe noncompliance with their training and/or if "near misses" or rack strikes occur, among other performance issues. Other consistent characteristics of the PIT operator safety training include a combination of classroom training, written tests, demonstrations of safe operation, and observations of the trainee operating the PIT. Training materials may include lectures, PowerPoint presentations, and videos identifying the hazards of the work environment, including the under-ride hazard, and the means to avoid these hazards.

As OSHA noted in the preamble to its PIT Standard, compliant training is adequate to materially reduce the hazard of an operator riding into a storage rack. 63 Fed. Reg. at 66242 *(Dec. 1, 1998).* Similarly, the Review Commission has also favorably recognized that training that requires an employee to exercise judgment is an adequate means of abatement under the General Duty Clause. *See Ala. Power*

*Co. v. Sec'y of Labor*, 1987 OSAHRC LEXIS 92, *13 (O.S.H.R.C. April 17, 1987) (explaining "a safety rule is not inadequate merely because it requires employees to exercise a certain degree of judgment and discretion.")

Thus, while some retailers may choose to implement additional measures, the retail industry's customary practice to address the PIT under-ride hazard and other hazards associated with PIT operations is to provide PIT operators with robust safety training to prepare employees for the many on-the-job judgment calls they will need to make when operating a PIT. This training satisfies OSHA compliance obligations.

### C.  OSHA Guidance on the PIT Under-Ride Hazard Undercuts OSHA's Position.

The Secretary's position appears to be that the industry should have recognized the need to adopt the abatement measures OSHA proposed in this case because a "Safety and Health Information Bulletin" addressing "Standup Forklift Under-ride Hazards" ("Under-Ride SHIB") issued by OSHA in 2009 included those measures among a list of "*recommendations* [that] will reduce the risk of under-ride hazards." U.S. Dep't of Labor, OSHA, Directorate of Technical Support and Emergency Management, Office of Science and Technology Assessment, *Standup Forklift Under-ride Hazards Safety and Health Information Bulletin, SHIB 07-27-2009, available at* https://www.osha.gov/sites/default/files/publications/shib072709.pdf. However, the Secretary's reliance on the Under-Ride

SHIB to establish fair notice, industry recognition, or industry custom for additional abatement measures is misplaced. The guidance to the regulated community in OSHA's 2009 Under-Ride SHIB is unmistakable: (1) the PIT under-ride hazard is a serious one in DCs; (2) employers with DCs are required to address that hazard by complying with OSHA's PIT Standard at Sections 1910.178(l) and 1910.178(n); and (3) employers *may, but are not required to*, consider other non-mandatory measures to further reduce the risk of that hazard.

Accordingly, OSHA's Under-Ride SHIB makes clear that OSHA has established legal *requirements* to address the PIT under-ride hazard – providing PIT operator training compliant with Section 1910.178(l) and ensuring that PIT operators keep their PITs under control at all times and look in the direction of travel pursuant to Sections 1910.178(n)(1) and (n)(6). Although OSHA identified some non-mandatory recommended practices employers *may* consider implementing, the Under-Ride SHIB carefully distinguishes between conduct that is required by law and conduct that is voluntary.

For example, the Under-Ride SHIB includes two sections in succession that are labeled with the headers: first, "OSHA's Standard Requirements;" then, "Recommendations." *Id.* at 3. In the "Requirements" section of the SHIB, OSHA lists the training requirements at Section 1910.178(l) and the safe operating requirements at Section 1910.178(n). The "Requirements" section of the SHIB

does not include the options of raising the level of guarding on PITs or lowering

the level of horizontal beams on storage racks; rather, these appear in the

"Recommendations" section. *See id.*

Beyond that judicious grouping, OSHA is careful in the SHIB to use

mandatory language, like "shall" and "must" only when discussing the

requirements of Section 1910.178, and to use voluntary language, like "should," "if

possible," and "recommended practices" whenever discussing various other ideas,

including the particular alternative abatement measures identified in the citation in

this case. *Id.* at 3-4. Non-mandatory language like that cannot give rise to fair

notice of a legal requirement because it cannot create a legal requirement. *See*

*Sec'y of Labor v. A. Prokosch & Sons Sheet Metal, Inc.,* 8 OSH Dec. (CCH) ¶

24840, 1980 WL 10666 (OSHRC 1980) (holding that "an advisory standard cannot

be the basis for finding a violation of the [OSH] Act."); *see also Sec'y of Labor v.*

*Tampa Shipyards, Inc.*, 1987 WL 89204 (Oct. 19, 1987) (OSHRC 1987) ("[t]he

general duty clause cannot be used to enforce 'should' standards.").

The SHIB also cross-references OSHA's PIT "eTool" guidance document,

which the SHIB describes as providing "a review of potential hazards and a

summary of key *OSHA requirements* and *industry-recommended practices* for

forklift operations." *Standup Forklift Under-ride Hazards SHIB* at 4 (emphasis

added). This e-Tool treats the retrofitting options in the same manner as the SHIB:

recommendations for consideration by the industry.

   *   *   *   *   *   *

  In sum, issuance of this General Duty Clause citation to Petitioner based on

a failure to retrofit PIT equipment and redesign storage racking to address the

under-ride citation blind-sided the retail industry. As noted above, nothing in the

PIT Standard or the SHIB mandates these measures. The Secretary points to no

evidence of a standard, retail industry custom or practice of adopting these

engineering controls because that is not customary in the retail industry. Under this

Circuit's precedent, which is designed to ensure that fair notice is provided to the

regulated community before a punishment is imposed for an alleged violation of

performance-based legal requirements, this citation must be vacated.

## CONCLUSION

  For all of the foregoing reasons, *amicus curiae* respectfully requests that this

Court reverse the Review Commission's decision and order that the Secretary's

citation be vacated.

September 8, 2022         Respectfully submitted,

               /s/ Eric J. Conn
               Eric J. Conn
Deborah R. White         CONN MACIEL CAREY LLP
Kathleen McGuigan        5335 Wisconsin Ave., NW, Suite 660
Susan Kirsch           Washington, DC 20015
RETAIL LITIGATION CENTER, INC.   (202) 909-2737
99 M Street, SE Suite 700      econn@connmaciel.com
Washington, DC 20003

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) and 11th Cir. R. 35-8 because it contains 5,578 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 29-3.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman Font.

/s/ Eric J. Conn

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2022, a true and correct copy of the foregoing Brief was served on all counsel of record in this appeal via CM/ECF.

/s/ Eric J. Conn